[No. F028124. Fifth Dist. Aug. 18, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
LOUIS EDWARD CALLAHAN, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I(C), I(D), II and III.

**COUNSEL**

Richard Jay Moller, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Louis M. Vasquez and Julie Erdmann, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**ARDAIZ, P. J.**—A jury found appellant Louis Edward Callahan guilty of committing a lewd or lascivious act upon a child under the age of 14 years. (Pen. Code, § 288, subd. (a).) The child was appellant's nine-year-old daughter. The jury also found that appellant previously had been convicted of two serious or violent felonies within the meaning of California's "Three Strikes" law. (Pen. Code, §§ 667, subds. (b)-(i), 1170.12.) The two prior convictions were another Penal Code section 288, subdivision (a) violation and an assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)). The court sentenced appellant to a term of 35 years to life. This consisted of twenty-five years to life for the current Penal Code section 288, subdivision (a) conviction, plus a five-year enhancement under Penal Code section 667, subdivision (a), for each of his two prior felony convictions. On this appeal he contends (1) various evidentiary rulings made by the trial court deprived him of a fair trial, (2) the trial court erred in excusing one juror for cause and in refusing to excuse another juror, and (3) his sentence of 35 years to life "violates the law in several ways." As we shall explain, we find no error warranting reversal and will affirm the judgment.

In a criminal action in which the defendant is accused of a sexual offense, Evidence Code section 1108 permits the prosecution to present "evidence of the defendant's commission of another sexual offense or offenses . . . if the

evidence is not inadmissible pursuant to Section 352."[1] In the published portion of this opinion, we address the issue of how a defendant may rebut such evidence. We conclude that when the prosecution introduces evidence under section 1108 of the defendant's commission of another sexual offense or offenses, the defendant is not precluded from introducing evidence of specific instances of his good behavior under similar circumstances.

## FACTS

Nine-year-old Brandi, the victim in this case, lived with her brother, Louis, in the home of their mother, Evelyn. Also living in Evelyn's home were Brandi's four half sisters and a half brother. On or about August 9 or 10, 1996, Brandi and Louis spent the night at the home of appellant, their father. Appellant lived with his girlfriend Kelsie, their two children Kwmayne and Marion, and Kelsie's daughter Nefertiti. On the day in question, appellant picked up Brandi and Louis from Evelyn's house about 10:30 or 11 in the morning. Appellant brought them to Kelsie's house. Later that day appellant, Kelsie, Brandi and Louis attended a barbecue at the home of appellant's sister Jerrelyn. After the barbecue they returned to Kelsie's house. From about 8 p.m. until 11 p.m. appellant was away from Kelsie's house. During this time appellant was visiting a woman named Tavonna. That night Brandi, Louis, and Nefertiti slept in the living room of Kelsie's house. Nefertiti was two or three years old. Marion was a baby. According to Kelsie, Marion slept "right next to" the bedroom shared by Kelsie and appellant.

Sometime during the night, appellant entered the living room. Brandi was wearing a shirt and underwear. Appellant rubbed Brandi's vaginal area. Brandi described this area as "my private." The next day Brandi and Louis came home to Evelyn's house. When Brandi and Louis had been back at Evelyn's house for three or four days, Brandi's half sister Lacriettia told Evelyn that Brandi wanted to talk to Evelyn. Brandi then told Evelyn that appellant had touched her. The next day Evelyn took Brandi to the hospital for an examination. While they were at the hospital, Brandi spoke to Deputy Sheriff Christopher Speer. According to Deputy Speer, Brandi told Speer that her father had been running around the house in his boxer shorts and that her father had stuck his hand down the front of her pants. Brandi was examined by Dr. Ian Ferguson. According to Dr. Ferguson, he "did a limited emergency department evaluation to determine if there was any acute need for intervention." He found no such acute need, and referred Brandi for a sexual assault examination by a specialist, Dr. Jess Diamond.

Dr. Diamond examined Brandi on August 21, 1996. He was called as a defense witness and testified that he found no physical evidence of child

---

[1] All statutory references are to the Evidence Code unless otherwise stated.

molestation. On cross-examination he was asked if he took a history from the patient. He said, "I did." When he was asked what that history was, he stated: "Patient stated to me alone in the room, counselor, that her dad, Peanuts, touched her private, referring to the genital area, with his hand. The last time he did it was several weeks ago at his house where she spent the night. He did it in the living room. She was wearing a dress and panties. He put his hand under her panties and touched her private. It hurt. After when she went to pee she saw blood in the water. The above happened on the couch and it was nighttime. He told her not to tell anybody, and if she did, he would tie her up."

Special Agent Ignacio Zamora, Jr., interviewed appellant in connection with the investigation of the case. Zamora was with the United States Secret Service, which had special federal funding to assist local law enforcement agencies in cases involving suspected child abuse. Zamora read appellant his *Miranda*[2] rights and told appellant that appellant could end the interview at any point in time if appellant wished to. Zamora testified that appellant admitted having improperly touched Brandi. Zamora testified: "He said that he, he explained to me the events that had occurred at his house that particular weekend, beginning with the fact that he had had his kids over for the weekend and he'd put 'em to bed on his living room couch. That he'd awoken and had found Brandi laying on the couch with her blanket off and her underwear were exposing her vagina, and he told me that he had gone over and admitted that he had rubbed, improperly touched the little girl's vagina prior to replacing her underwear over her vagina, covering her, walking away." According to Zamora, appellant also told Zamora that appellant "had a problem touching people and that he needed help" and that he "felt bad because he had violated his little girl, Brandi." Zamora's interview with appellant lasted approximately three hours and fifty minutes and was not tape-recorded. At no time did appellant ever ask for the interview to stop. When Zamora was finished interviewing appellant, Zamora called Detective Allan Hall of the Kern County Sheriff's Department into the room. Zamora told Hall what appellant had said. As Zamora did this, appellant said "yeah" and nodded his head up and down.

Detective Hall testified about what appellant told him after Hall had entered the interview room. Hall testified: "He said he reached down with his hand and touched her on the vagina, said his hand was there only a short period of time, then he pulled the panties back over the vagina and he picked up a blanket that had fallen on the floor and covered her back up with the blanket."

[2]*Miranda* v. *Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974].

Another prosecution witness was Philisha M., who was 18 years old at the time of trial. She testified that in 1990, when she was 12 years old, there was an occasion when both she and appellant were staying overnight at Philisha's cousins' house. One of Philisha's 2 female cousins was 11 years old and the other was 12 or 13. Philisha slept on the floor in her cousins' bedroom. During the night she woke up, and appellant was on top of her and was touching her breasts and her vagina with his hands. Appellant said "don't tell" and pulled her pants down. According to Philisha, this event ended when "he had got up off of me and I jumped in bed with my cousin, he had went into another room and then I was trying to wake my cousin up and he came back in there the second time and he saw me in the bed with my cousin so he left again, and then I ran into the room where—with my mother." The court allowed this evidence on the authority of Evidence Code section 1108, about which we will have more to say later in this opinion. We also note here that appellant's trial was bifurcated so that the allegations of appellant's prior convictions were tried separately from and subsequent to appellant's trial on the current Penal Code section 288, subdivision (a) charge. The jury thus did not hear, until it had found appellant guilty on the current Penal Code section 288, subdivision (a) charge, that appellant also had been convicted in 1990 of a Penal Code section 288, subdivision (a) violation for his conduct with Philisha.

Appellant testified in his own defense. He denied any improper touching of Brandi. He said that about 7:45 a.m. he went into the living room where Brandi and her brother Louis were sleeping on the couch. He said that he called Kelsie into the living room to look at Brandi and Louis "to show her how they are, to show that they [are] unseparable." He said: "I kinda moved Louis a little bit so that he wouldn't get a crook in his neck. And I pulled, I pulled Brandi's T shirt back down over her butt. Then I pulled the sheet off the floor and tucked it in on the side of her leg." Appellant denied having made the statements attributed to him by Agent Zamora and Detective Hall. When appellant was asked whether he had touched Philisha M. in an inappropriate manner in 1990, his answer was: "No, I didn't. Not that I can recall." When he was then asked if there was some reason he might have problems recalling, he answered "[b]ecause the night in question I was drunk when I came home." Appellant also testified on direct examination that he had a prior conviction for assault with a deadly weapon.

Kelsie's testimony was similar to appellant's. She testified that appellant called her into the living room at a little bit before 8:00 a.m. to look at Brandi and Louis on the couch. Referring to Louis and Brandi, Kelsie testified that appellant "set him up and he covered her up." Kelsie also testified that she did not see appellant do anything remarkable, and that

"[o]nly thing besides covering her up, he pulled her shirt down." This was consistent with appellant's own testimony that appellant had "pulled Brandi's T shirt back down over her butt." Other female relatives of appellant testified that appellant treated children well.

Appellant's unsuccessful defense argument was that Brandi was lying to please her mother, Evelyn. According to the defense, Evelyn wanted revenge on appellant for leaving her for Kelsie, and wanted to prevent appellant from seeing his children. One problem with this defense was that appellant himself testified that he was on parole and that a condition of that parole was "for me not to be around anyone under the age of 18, to have physical contact." Evelyn thus did not need to concoct a new charge to prevent appellant from seeing Brandi and Louis. Another problem with this defense was the testimony of Agent Zamora and Detective Hall about appellant's own confessions to them. The defense was that Zamora and Hall were simply lying about appellant's confessions to them, but the defense had no explanation of why Agent Zamora and Detective Hall would both be fabricating the confessions.

I

Evidentiary Issues

■ "No judgment shall be set aside, or new trial granted, in any cause, on the ground of . . . the improper admission or rejection of evidence . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13; accord, §§ 353 & 354.) "[A] 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; accord, *People* v. *Breverman* (1998) 19 Cal.4th 142, 149 [77 Cal.Rptr.2d 870, 960 P.2d 1094].) Appellant contends that the trial court made four erroneous evidentiary rulings. He contends that the court erred in (1) "permitting the introduction of a prior conviction for child molestation," (2) refusing to admit "evidence of appellant not having the character of a child molester," (3) refusing to admit evidence of a medical examination of Louis, and (4) denying appellant's motion to strike Brandi's entire testimony. As we shall explain, we find each of these contentions to be without merit.

(A) *Evidence of the Philisha M. Incident*

During pretrial motions *in limine*, appellant moved to exclude evidence of a 1987 misdemeanor conviction for unlawful sex with a minor (Pen. Code,

§ 261.5), and a 1990 conviction for committing a lewd or lascivious act with a child under the age of 14 years. Mary G. was the 1987 victim and Philisha M. was the 1990 victim. The prosecutor advised the court that he did not intend to use the 1987 conviction, or the actions which led to it, as part of the prosecution's case-in-chief, but that there was a possibility that the prosecutor might wish to use the 1987 incident for impeachment purposes. He also advised appellant and the court that he intended to use both the 1990 conviction itself, and evidence of what happened in the 1990 Philisha M. incident. With regard to the 1987 incident, the court ruled that the prosecutor "is not to inquire about the circumstances or facts underlying 261.5 misdemeanor incident until such time as he has first brought it to the Court's attention outside the presence of the jury and received ruling by the Court concerning whether he can use any, some, or none of those facts or circumstances." The prosecutor subsequently never sought to use the 1987 incident in any fashion at trial. With regard to the 1990 Philisha M. incident, the court ruled that evidence of that incident would be admissible. The court also ruled, however, that the jury could not be told that appellant incurred a Penal Code section 288, subdivision (a) conviction as a result of that incident. The court reasoned that "the fact that the prior conviction is the same as that charged here, that it would be under 352 extremely prejudicial" to admit the actual Penal Code section 288, subdivision (a) prior conviction.

The court ruled that sections 1108 and 1101 authorized admission of evidence of the 1990 Philisha M. incident.[3] The jury heard that evidence, which was presented primarily through the testimony of Philisha M. herself. Appellant now contends that the trial court erred "by permitting the introduction of a prior conviction for child molestation under Evidence Code sections 1101 and 1108." The short answer to this argument is that the court did not permit the introduction of any such conviction, and no evidence of

---

[3]Subdivision (a) of section 1108 states: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."

Section 1101 states:

"(a) Except as provided in this section and in Section 1102, 1103, 1108, and 1109, evidence of a person's character or a trait, of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion.

"(b) Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act.

"(c) Nothing in this section affects the admissibility of evidence offered to support or attack the credibility of a witness."

any such conviction was admitted into evidence.[4] To the extent that appellant is complaining that the court erred in allowing into evidence Philisha M.'s testimony about the 1990 incident, that evidence was properly admitted under section 1108. Appellant appears to concede that Philisha's testimony is admissible under the plain language of subdivision (a) of section 1108 "if the evidence is not inadmissible pursuant to Section 352," but argues that subdivision (a) of section 1108 does not allow admission of Philisha's testimony because (1) the statute is unconstitutional and (2) even if the statute is constitutional, the court abused its discretion in concluding that Philisha's testimony was not inadmissible pursuant to section 352.

Appellant's constitutional argument is that the admission of evidence of a defendant's commission of a prior sexual offense under section 1108 deprives him of the due process of law guaranteed by the Fourteenth Amendment to the United States Constitution. This contention was made and rejected in *People* v. *Fitch* (1997) 55 Cal.App.4th 172 [63 Cal.Rptr.2d 753], and we reject it again here for the reasons articulated in *Fitch*. Appellant relies on the federal Ninth Circuit case of *McKinney* v. *Rees* (9th Cir. 1993) 993 F.2d 1378, a case which was considered and rejected by the *Fitch* court. "[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules." (*Marshall* v. *Lonberger* (1983) 459 U.S. 422, 438, fn. 6 [103 S.Ct. 843, 853, 74 L.Ed.2d 646].) The United States Supreme Court does not deem itself to be "a rule-making organ for the promulgation of state rules of criminal procedure." (*Spencer* v. *Texas* (1967) 385 U.S. 554, 564 [87 S.Ct. 648, 754, 17 L.Ed.2d 606].) "And none of the specific provisions of the Constitution ordains this Court with such authority." (*Ibid.*) A state law of procedure "is not subject to proscription under the Due Process Clause unless 'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' " (*Patterson* v. *New York* (1977) 432 U.S. 197, 201-202 [97 S.Ct. 2319, 2322, 53 L.Ed.2d 281].) The *McKinney* decision found the trial of a murder defendant to have been fundamentally unfair because of the admission of much evidence about the defendant's fascination with knives and his prior misdeeds perpetrated with knives. The decedent was the defendant's mother, and she had been killed with a knife.

---

[4]As we have already mentioned, appellant's trial was bifurcated so that the allegations of appellant's prior convictions were tried separately from and subsequent to appellant's trial on the current Penal Code section 288, subdivision (a) charge. We are talking here about the portion of the trial pertaining to the current charge. The jury of course did hear evidence of appellant's 1990 Penal Code section 288, subdivision (a) conviction, which resulted from the Philisha M. incident, when the allegations of appellant's prior convictions were tried. The trial on the allegations of prior convictions did not begin until after the jury had found appellant guilty of the current Penal Code section 288, subdivision (a) charge involving Brandi.

The *McKinney* court observed that "[t]he rule forbidding the admission of evidence of character to show propensity has been codified in thirty-seven states other than California" and that "[t]welve other states and the District of Columbia have adopted the rule against the admission of character evidence to show propensity through case law." (*McKinney* v. *Rees, supra,* 993 F.2d at p. 1381, fn. 2.) The *McKinney* decision preceded not only the 1995 enactment of section 1108, but also the 1994 adoption (effective July 9, 1995) of rule 414(a) of the Federal Rules of Evidence (28 U.S.C.). That rule provides in pertinent part that "[I]n a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant." Indeed, as we pointed out in *People* v. *Soto* (1998) 64 Cal.App.4th 966, 986 [75 Cal.Rptr.2d 605], section 1108 "is modeled on rules 413 through 415" of the Federal Rules of Evidence. Evidence of the type presented in this case through the testimony of Philisha M. is thus not barred in all 50 states, but rather is admissible in the federal courts of all 50 states. (See, e.g., *U.S.* v. *Larson* (2d Cir. 1997) 112 F.3d 600, and *U.S.* v. *LeCompte* (8th Cir. 1997) 131 F.3d 767.) The *Fitch* court also observed: "By subjecting evidence of uncharged sexual misconduct to the weighing process of section 352, the Legislature has ensured that such evidence cannot be used in cases where its probative value is substantially outweighed by the possibility that it will consume an undue amount of time or create a substantial danger of undue prejudice, confusion of issues, or misleading the jury . . . . This determination is entrusted to the sound discretion of the trial judge who is in the best position to evaluate the evidence." (*People* v. *Fitch, supra,* 55 Cal.App.4th at p. 183; accord, *People* v. *Harris* (1998) 60 Cal.App.4th 727, 730 [70 Cal.Rptr.2d 689].)[5]

Nor are we persuaded that the court abused its section 352 discretion in admitting evidence of the Philisha M. incident. Section 352 states: "The

[5]The issue of whether admission of evidence of another sexual offense or offenses under section 1108 deprives a defendant of due process of law is presently before the California Supreme Court in *People* v. *Falsetta** (Cal.App.) review granted August 12, 1998, S071521, *People* v. *Ritson** (Cal.App.) review granted August 12, 1998, S071200, and *People* v. *Baker** (Cal.App.) review granted November 24, 1998, S073543. A similar statute, section 1109, was enacted in 1996 and allows admission of "evidence of the defendant's commission of other domestic violence" in a criminal action in which the defendant "is accused of an offense involving domestic violence." Whether admission of evidence under section 1109 deprives a defendant of due process of law is an issue also presently before the California Supreme Court in *People* v. *Tufunga** (Cal.App.) review granted September 16, 1998, S072486 and *People* v. *Hoover** (Cal.App.) review granted September 23, 1998, S072374.

*Reporter's Note: For Supreme Court opinion, see *People* v. *Falsetta* (1999) 21 Cal.4th 903; for Supreme Court opinion, see *People* v. *Tufunga* (1999) 21 Cal.4th 935; for *People* v. *Ritson,* on December 15, 1999, review dismissed and cause remanded to Court of Appeal, Third Appellate District; for *People* v. *Baker,* on December 15, 1999, review dismissed and cause remanded to Court of Appeal, Third Appellate District; for *People* v. *Hoover,* on December

court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." ■ "Under Evidence Code section 352, the trial court enjoys broad discretion in assessing whether the probative value of particular evidence is outweighed by concerns of undue prejudice, confusion or consumption of time." (*People* v. *Rodrigues* (1994) 8 Cal.4th 1060, 1124 [36 Cal.Rptr.2d 235, 885 P.2d 1].) A trial court's exercise of its discretion under section 352 " 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.' " (8 Cal.4th at p. 1124) ■ Prior to the enactment of section 1108, evidence of a defendant's bad character was inadmissible except in certain narrowly drawn instances. (See § 1101 and *People* v. *Ewoldt* (1994) 7 Cal.4th 380 [27 Cal.Rptr.2d 646, 867 P.2d 757].) As this court explained in *People* v. *Soto, supra,* 64 Cal.App.4th 966, the enactment of section 1108 expanded the scope of permissible character evidence to include evidence of the type described in the new statute, i.e., "evidence of the defendant's commission of another sexual offense or offenses." As we stated in *Soto*:

"According to the Legislative Counsel's Digest, the enactment of section 1108 created an exception to the existing prohibition in section 1101 against the introduction of evidence of a person's character or trait of character to prove conduct on a specific occasion. (See Stats. 1995, ch. 439, § 2.) With the enactment of section 1108, the Legislature 'declared that the willingness to commit a sexual offense is not common to most individuals; thus, evidence of any prior sexual offenses is particularly probative and necessary for determining the credibility of the witness.' (*Review of 1995 Cal. Legislation, supra,* 27 Pacific L.J. 761, 762.)

"The Historical and Statutory Notes contained in the annotations for section 1108 discuss the legislative history of the enactment. (See Historical Note, 29B pt. 3, West's Ann. Evid. Code, *supra,* foll. § 1108, p. 31.) During the legislative hearings, the language of the proposed section 1108 was amended ' "to provide explicitly that evidence of other offenses within the scope of the section is not subject to [section] 1101's prohibition of evidence of character or disposition. This makes it clear that [section] 1108 permits courts to admit such evidence on a common sense basis—without a precondition of finding a 'non-character' purpose for which it is relevant—and permits rational assessment by juries of evidence so admitted. This includes consideration of the other sexual offenses as evidence of the defendant's

15, 1999, cause transferred to Court of Appeal, Fourth Appellate District, Division Two, with directions, for subsequent opinion see 77 Cal.App.4th 1020.

disposition to commit such crimes, and for its bearing on the probability or improbability that the defendant has been falsely or mistakenly accused of such an offense." ' (*Ibid.*)" (*People* v. *Soto, supra,* 64 Cal.App.4th 966, 983-984.)

With regard to the section 1108, subdivision (a) phrase "if the evidence is not inadmissible pursuant to Section 352," we stated in *Soto:* "While section 1108 'explicitly supersedes' section 1101's prohibition of evidence of character or disposition, it does not supersede other provisions of the Evidence Code, such as normal hearsay restrictions and the court's authority to exclude evidence presenting an overriding likelihood of prejudice under section 352. (Historical Note, 29B pt. 3, West's Ann. Evid. Code, *supra,* foll. § 1108, p. 31.) The legislative history expressly refers to the balancing analysis of *Ewoldt* and [*People* v.] *Balcom* [(1994) 7 Cal.4th 414 [27 Cal.Rptr.2d 666, 867 P.2d 777]] as analogous situations. (*Ibid.*) However, section 1108 affects the practical operation of section 352 balancing ' "because admission and consideration of evidence of other sexual offenses to show character or disposition would be no longer treated as intrinsically prejudicial or impermissible. Hence, evidence offered under [section] 1108 could not be excluded on the basis of [section] 352 unless 'the probability that its admission will . . . create substantial danger of undue prejudice' . . . substantially outweighed its probative value concerning the defendant's disposition to commit the sexual offense or offenses with which he is charged and other matters relevant to the determination of the charge. As with other forms of relevant evidence that are not subject to any exclusionary principle, the presumption will be in favor of admission." ' (Historical Note, 29B pt. 3, West's Ann. Evid. Code, *supra,* foll. § 1108, p. 31.) Section 1108 does not require ' "more exacting requirements of similarity between the charged offense and the defendant's other offenses . . . ." ' (*Ibid.*) Such a requirement was not added to the statute because 'doing so would tend to reintroduce the excessive requirements of specific similarity under prior law which [section 1108] is designed to overcome, . . . and could often prevent the admission and consideration of evidence of other sexual offenses in circumstances where it is rationally probative. Many sex offenders are not 'specialists', and commit a variety of offenses which differ in specific character." ' (*Id.* at pp. 31-32.)" (*People* v. *Soto, supra,* 64 Cal.App.4th at p. 984.)

Three published cases have reviewed a trial court's exercise of its section 352 discretion on evidence offered under section 1108. In *Soto,* the defendant was tried on two counts of committing a lewd and lascivious act with a child under the age of fourteen years. He was convicted on one of those counts. The victim was his 12-year-old niece. The court admitted testimony of another niece and of the defendant's sister, both of whom testified that the

defendant had fondled them when they were children. The niece testified that she was four or five years old when the incidents occurred, that there were two such incidents, and that on at least one of these two instances the defendant "adjusted her legs" and took pictures of her. (64 Cal.App.4th at p. 977.) The sister testified that the defendant improperly touched her and digitally penetrated her, and that these incidents occurred approximately four times per week over a period of about four years, beginning when she was seven or eight years old. We found no abuse of discretion, and noted that "the propensity evidence was extremely probative of appellant's sexual misconduct when left alone with young female relatives, and is exactly the type of evidence contemplated by the enactment of [Evidence Code] section 1108 and the parallel federal rules." (*People* v. *Soto, supra,* 64 Cal.App.4th at pp. 991-992.)

In *People* v. *Yovanov* (1999) 69 Cal.App.4th 392 [81 Cal.Rptr.2d 586], the defendant was charged with and convicted of 36 counts of committing a lewd act on a child. The victim was his girlfriend's daughter, a young girl named Kristy. At trial, the court also received evidence that the defendant had committed similar acts with Kristy's identical twin sister, Kathy. The appellate court found no abuse of discretion by the trial court in admitting the evidence of the defendant's sexual misconduct with Kathy. "[T]he uncharged acts had great probative value, given their close resemblance and temporal proximity to the charged crimes." (*People* v. *Yovanov, supra,* 69 Cal.App.4th at p. 406.)

*Soto* and *Yovanov* stand in stark contrast to *People* v. *Harris* (1998) 60 Cal.App.4th 727 [70 Cal.Rptr.2d 689]. In *Harris* the defendant was a male mental health nurse, approximately 50 years of age. He was convicted of six counts of sex crimes involving forcible sexual touching of two different women, Tracy and Brenda. Brenda was 29 years old and was married with 2 children. Tracy was 34. The defendant had met both women when they were patients at a mental health treatment center where he worked. Prior to the commission of the crimes, Brenda had suffered from suicidal depression and Tracy had "a long history of mental problems, including delusions and hallucinations" and was "always on medications, such as Paxil, Haldol, Depakote and Risperidone." (60 Cal.App.4th at p. 731.) The defendant and Brenda had also had consensual oral copulation and sexual intercourse on the defendant's boat several days prior to the alleged offenses against Brenda. The offenses against Brenda took place in Brenda's home, where the defendant mouthed Brenda's breast (Pen. Code, § 243.4, subd. (a)), and fingered and mouthed her vagina (Pen. Code, §§ 289, subd. (a), 288a, subd. (c)). A few weeks later Brenda and Tracy were both attending a group therapy session on "shame." Tracy told the group about a mental health nurse who had licked her breast (Pen. Code, § 243.4, subd. (b)) and touched

her clitoris (Pen. Code, § 289, subd. (b)) at the mental health center. The nurse had also taken her hand and used it to rub his penis through his pants (Pen. Code, § 243.4, subd. (c)). Brenda asked Tracy if she knew who the man was, and Tracy told Brenda it was the defendant. The defendant's defense to Tracy's allegations was that Tracy was hallucinating. The defense to Brenda's allegations was "an amalgam of consent, reasonable belief in consent and an emphasis on Brenda's desire to excuse her adultery." (*People v. Harris, supra,* 60 Cal.App.4th at p. 732.) Neither of the women's accounts of their experiences with the defendant involved the use of any weapon or the infliction of any physical injury. The prosecution was allowed to introduce evidence of a 23-year-old incident for which the defendant was convicted of first degree burglary with the infliction of great bodily injury. At least three witnesses testified about the 1972 incident. Two of them, apparently both police officers, described what they saw when they were sent to an apartment building about 3:30 a.m. on July 16, 1972, and found a 23-year-old female lying on the floor. The woman was naked from the waist down, with her legs spread apart, had blood on her vagina and on her mouth, was unconscious or semiconscious, and was swollen severely about the head and face. One of the officers testified that the victim " 'was wearing a nightgown or semi nightgown [that] was stained up in the chest area and lower portion pulled up or at that time was all gathered up around the stomach area here and that was all she had on.' " (60 Cal.App.4th at p. 734.) Another officer testified that " 'there appeared a rape had taken place inside the apartment.' " (*Ibid.*) The defendant was found hiding in a nearby sealed veranda that was used to store supplies for the pool. A police investigator testified that the defendant had blood on his jockey shorts, on the inside of his thighs, and on his penis. Another officer testified that the defendant had blood on his shirt and " 'all over the front crotch and stomach area.' " (*Id.* at p. 735.) The *Harris* court found the introduction of this evidence "inflammatory *in the extreme*" and concluded that the trial court had abused its discretion in admitting that evidence. "Without minimizing the trauma suffered by each victim, at worst defendant licked and fondled an incapacitated woman and a former sexual partner, both of whom were thereafter on speaking terms with him. Although the assaults described by Tracy and Brenda are criminal, involving a breach of trust by a caregiver, the abuse the victims suffered is, unfortunately, not unusual or shocking. On the other hand, the evidence of the 1972 incident described a viciously beaten and bloody victim who as far as the jury knew was a stranger to the defendant. The defendant's role in the attack and his subsequent conviction for burglary, while apparently violent and sexual, is unexplained. The jury is simply told that defendant was convicted of burglary with the infliction of great bodily injury." (60 Cal.App.4th at p. 738.)

It is readily apparent that the present case is much more akin to *Soto* and *Yovanov* than it is to *Harris*. The section 352 factors here weigh heavily in

favor of the admission of evidence of the 1990 Philisha M. incident. There was no undue consumption of time. Philisha's testimony was brief and to the point. Her complete testimony, summarized above in the "Facts" section of this opinion, covers only nine pages of the trial transcript. There was not a substantial danger of undue prejudice because the circumstances of the Philisha M. incident were no more inflammatory than the circumstances of the current incident involving Brandi. (See *People* v. *Yovanov*, *supra*, 69 Cal.App.4th at p. 406.) "The 'prejudice' referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against defendant as an individual and which has very little effect on the issues. In applying section 352, 'prejudicial' is not synonymous with 'damaging.'" (*People* v. *Yu* (1983) 143 Cal.App.3d 358, 377 [191 Cal.Rptr. 859]; accord, *People* v. *Bolin* (1998) 18 Cal.4th 297, 320 [75 Cal.Rptr.2d 412, 956 P.2d 374].) Appellant also argues that he was unduly prejudiced because the jury was not informed, during the trial on the current charge, that he had been criminally convicted for his actions with Philisha, and the jury was therefore inclined to punish appellant for his actions with Philisha. This case is not like *People* v. *Harris*, however, where the jury heard evidence suggesting that the defendant had committed a vicious, bloody battery and rape, and was told that the defendant had been convicted of burglary, but not of assault or of any sex crime. (*People* v. *Harris*, *supra*, 60 Cal.App.4th 727.) The *Harris* jury therefore was affirmatively given the impression that the defendant there had committed a battery and rape and had never been convicted for those crimes. In the present case the jury was not told one way or the other about any legal action which may have resulted from the Philisha M. incident.[6] Furthermore, appellant himself testified that he had been on parole, and that a condition of his parole was that he not be around anyone under the age of 18. If the jury inferred anything from the lack of evidence about any legal proceeding resulting from the Philisha M. incident, it therefore probably would have been that he had incurred a criminal conviction as a result of the Philisha M. incident. Furthermore, appellant made a strategic decision not to tell the jury about his prior Penal Code section 288, subdivision (a) conviction. It was appellant who sought to exclude both the fact of that conviction and the evidence of the factual scenario which led to it. Once the court ruled that evidence of the incident itself would be admissible, appellant could have dropped his request that the fact of conviction not be admitted. Instead, he made the tactical decision to keep the conviction out and to testify that he never improperly touched Philisha. He also called his 18-year-old niece Ada to testify that Philisha had told Ada that appellant had never laid a hand on Philisha. He cannot now complain that the trial court granted his motion to exclude from evidence the prior Penal Code section 288, subdivision (a) conviction.

---

[6]See footnote 4, *ante*, page 365.

Nor are we persuaded by appellant's conclusory argument that admission of the evidence of the Philisha M. incident somehow confused the issue the jury had to consider. The jury was instructed that it could not find appellant guilty of the crime against Brandi unless the evidence showed that crime to have been proven beyond a reasonable doubt. The jury was further instructed to determine "whether the prosecution has proved by a preponderance of the evidence that there was a lewd act between the defendant and Philisha [M.]." The jury was further told that "[i]f you find that the prosecution has not proved by a preponderance of the evidence that there was a lewd act between the defendant and Philisha [M.], then you must reject the evidence entirely and not consider it in any way." The court further instructed the jury that if it found that a lewd act did occur between appellant and Philisha M., that "such evidence was received and may be considered by you for the purpose of supporting the credibility of an accusing witness if the evidence shows that the defendant had a propensity to engage in a certain or in certain types of sexual activity." ■ "The crucial assumption underlying our constitutional system of trial by jury is that jurors generally understand and faithfully follow instructions." (*People* v. *Mickey* (1991) 54 Cal.3d 612, p. 689, fn. 17 [286 Cal.Rptr. 801, 818 P.2d 84]; *People* v. *Delgado* (1993) 5 Cal.4th 312, 331 [19 Cal.Rptr.2d 529, 851 P.2d 811].) "We presume that jurors follow the court's instructions." (*People* v. *Davenport* (1995) 11 Cal.4th 1171, 1210 [47 Cal.Rptr.2d 800, 906 P.2d 1068]; *People* v. *Turner* (1994) 8 Cal.4th 137, 190 [32 Cal.Rptr.2d 762, 878 P.2d 521].) ■ There is nothing to suggest that the jury did not understand the purpose of the evidence about the Philisha M. incident. The court did not abuse its discretion in admitting that evidence.

Having concluded that the court did not err in admitting the evidence under section 1108, we need not and do not address the issue of whether that evidence was also admissible under section 1101, subdivision (b) as evidence pertaining to appellant's "intent." (See also *People* v. *Soto, supra,* 64 Cal.App.4th at p. 992.)

(B) *Appellant's Character Evidence*

■ Appellant contends that the trial court denied him a fair trial "by excluding evidence of appellant not having the character of a child molester." We find this argument to be without merit. Appellant called four character witnesses. These were his 11-year-old niece (Tammara B.), his 18-year-old niece (Ada N.), and his sisters (Rosemary M. and Jerrelyn M.). Eleven-year-old Tammara testified that appellant had babysat her at his house more than 20 times, and that appellant treated her "nice" and "gentle." Appellant had babysat her from the time she was a small child. This occurred before 1996. She was never alone with him in 1996. Eighteen-year-old Ada testified that she had seen appellant around children "a lot" and that

she herself had seen him "a lot" over the years. She estimated that she had seen him with children probably more than 100 times, and that these children included "[m]y younger sister and brothers, cousins, many family, children." She further testified:

"Q Based upon your observations of seeing Mr. Callahan with children on your, based upon your own contact with him as a child, do you have an opinion about his character as it pertains to his treatment, to the treatment of children?

"A He takes very good care of 'em.

"Q So what is that opinion?

"A I really don't know how to answer it. When we're around him, he take very good care of us." On cross-examination Ada testified that she knew appellant had impregnated Evelyn when Evelyn was 14 years old. The child Evelyn then bore was Brandi. Ada also testified that she was aware that Philisha had alleged that appellant had molested Philisha, but this did not change Ada's opinion about appellant. She also testified that she had seen more of appellant before 1990 than after 1990, and that after 1990 there were periods of years when she did not see appellant at all. She said that "from me being five till about, you know, '90 when he first went to jail, I seen him frequently."

Appellant's older sister Rosemary testified that she had 4 children, and that at the time of trial these children were ages 19, 17, 13 and 11. Rosemary testified that during the time when her children were growing up, appellant babysat them. She testified about appellant that she "never had a problem with him and my children at all" and that appellant was "fine" with them. On cross-examination she said that she was aware of Philisha's accusation that appellant had molested her, and was aware that Evelyn was 14 years old when Evelyn became pregnant by appellant.

Jerrelyn M. testified that she had two sons, ages sixteen and seven, and that she had known appellant all her life. She said that she had observed appellant around children "so many times I couldn't number," and that she had allowed appellant to babysit her own children. As a result of these observations, she had formed the opinion that appellant was a "very wonderful person around children." On cross-examination she said that she too had heard about Philisha M.'s accusation that appellant had molested Philisha. She was also aware that Evelyn had given birth to appellant's child when Evelyn was 14 or 15 years old. Her knowledge of these events did not change her opinion that appellant was good around children.

Appellant makes no contention of error about any evidentiary ruling pertaining to the testimony of Rosemary M. or Jerrelyn M. He does complain, however, that the court improperly excluded evidence that Tammara B. and Ada N. would have offered about appellant's "not having the character of a child molester." When appellant's counsel called Tammara as a witness, counsel attempted to establish that Tammara was well acquainted with appellant. This did not go well, at least at first. When Tammara was asked if appellant had "taken care of you in your life," she answered "yes." But she said she did not know when appellant began taking care of her. When she was asked what her first memories were of appellant taking care of her, she replied "I can't remember." When she was asked how many times appellant had babysat her, she answered that she did not know. When Tammara was asked "How does Mr. Callahan treat you when he baby-sits you," she replied "Nice. Gentle." When Tammara was asked "Has he ever touched you in a way that made you feel uncomfortable," she replied "No." A belated objection on the ground of "foundation" was sustained, but the answer was not stricken. Objections on the ground of "foundation" were then sustained to the questions (1) "Do you have an opinion about whether Mr. Callahan is the kind of person who would molest a child;" (2) "And do you have an opinion about whether or not Mr. Callahan has the character for child molestation;" and (3) "Do you have an opinion about whether Mr. Callahan is the kind of person who would molest a child?" When appellant's counsel later (during a break in Ada's testimony) placed on the record her objections to the court's rulings disallowing appellant's proposed opinion evidence, the court said: ". . . I'm not sure that you've laid the foundation for either of these two witnesses that they have any, any acuity in terms of maturity to formulate any opinions whatsoever . . . You're asking for them to have an ability that has sufficient maturation and reasoning process to be able to formulate and articulate an opinion. That is the problem that I have, neither witness demonstrated that to any extent whatsoever." The court also stated that "neither of these witnesses demonstrated any, any sense of maturity whatsoever to be able to either rationally think or articulate such concepts."

When Ada N. testified, appellant's counsel asked Ada "During the time that Mr. Callahan watched you, was there—did he ever touch you in [an] inappropriate manner?" The prosecutor's objection of "improper evidence" was sustained. Out of the presence of the jury, appellant's counsel then argued that appellant should be allowed to rebut the prosecutor's evidence of the Philisha M. incident with evidence that appellant behaved well around other children and did not molest them. The court ruled, however, that "[s]pecific incidents of conduct, I'm not allowing evidence about specific incidents of conduct."

Appellant argues that the court erred in not allowing Ada to testify that appellant never touched her in an inappropriate manner. We agree with

appellant. The prosecutor successfully argued to the trial court that admission of evidence of the Philisha M. incident under section 1108 was "propensity evidence" and "not character evidence." The People on this appeal take a different approach. They now argue that "the [trial] court correctly denied appellant the opportunity to present witnesses to testify that appellant did not molest them because the evidence is not relevant to his propensity to molest children." We are not persuaded.

Subdivision (a) of section 1101 states: "Except as provided in this section and in Sections 1102, 1103, 1108 and 1109, evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." Thus the Evidence Code itself tells us that evidence offered pursuant to section 1108 is character evidence. The term "character" or "character evidence" is not defined in the Evidence Code, but the term "character" has been described as "the tendency to act in a certain manner under given circumstances." (*People* v. *Shoemaker* (1982) 135 Cal.App.3d 442, 446, fn. 2 [185 Cal.Rptr. 370].) When the prosecution introduces evidence under section 1108 of a defendant's commission of a prior sexual offense, how may the defendant rebut that evidence? One way is for the defendant to present any evidence he may have that he did not commit the prior offense. Another way is to present "evidence of the defendant's character or a trait of his character in the form of an opinion or evidence of his reputation." (§ 1102.) Indeed, under section 1102 a defendant has a right to present opinion and reputation evidence even if the prosecution has not first presented any section 1108 evidence. But may a defendant who is faced with the prosecution's presentation of evidence of the defendant's commission of a prior sexual offense rebut that evidence with his own showing of what might be called, for lack of a better term, evidence of his good behavior under similar circumstances? Neither side calls our attention to any authority addressing this particular issue. As we shall explain, however, we think the Evidence Code contemplates the admissibility of such evidence.

We begin our analysis of the People's argument by noting its inherent inconsistency. The People argue under 1108 that, "the statute does not intend to demonstrate that appellant molests every child, but rather, that he has a propensity to molest some children." In effect the People accept the proposition of the statute that a prior molestation is relevant to whether the accused molested the alleged victim because his/her past molestations increase the likelihood he/she acted in the same manner on the occasion in question. In other words, by committing a prior act of molestation, one demonstrates one may have a propensity to act that way thus increasing the likelihood that one did act in accord with that propensity.

On the other hand, the issue of whether one has a propensity—"natural inclination or tendency"—to behave a certain way is not resolved dispositively by the fact that one has behaved that way on another occasion. (Webster's New World Dict. (2d college ed. 1982) p. 1139.) However, the fact one has behaved a certain way before does have a probative value on whether a person is capable of such conduct and whether he/she is disinclined or not to engage in such conduct. Therefore, proof that a person has not behaved in a similar situation to the situation used to show tendency or propensity is probative to show he/she does not have that tendency. Just as evidence of prior bad acts is not dispositive that a person behaved that way again, proof that they did not behave that way given a similar opportunity is probative of whether he/she does not have a propensity. Such evidence would have probative value in showing that the accused does not have a propensity to engage in certain behavior, thus helping the trier of fact determine that they should not utilize a conclusion of propensity in determining whether the accused committed the act in question.

We pointed out in *People* v. *Soto, supra,* 64 Cal.App.4th 966, that section 1108 was patterned after rules 413 through 415 of the Federal Rules of Evidence.[7] When Congress enacted the new federal rules in 1994, the legislation also provided that (1) the Judicial Conference of the United States shall, within 150 days of the enactment, transmit to Congress a report containing recommendations for amending the federal rules as they affect the admission of evidence of a defendant's prior sexual assault or child molestation crimes in cases involving sexual assault and child molestation, (2) if the recommendations were the same as the congressional legislation (i.e., the same as the proposed federal rules 413 through 415), then the new rules would become effective 30 days after transmittal of the recommendations, and (3) if the Judicial Conference's recommendations differed from the proposed new rules 413 through 415, then the proposed new rules 413 through 415 would become effective 150 days after the transmittal of the recommendations "unless otherwise provided by law." (See Federal Criminal Code and Rules (1999) Historical Notes, p. 253.) The Judicial Conference transmitted its report to Congress on February 9, 1995. The report's

---

[7]Subdivision (a) of Federal Rules of Evidence, rule 413 states: "In a criminal case in which the defendant is accused of an offense of sexual assault, evidence of the defendant's commission of another offense or offenses of sexual assault is admissible, and may be considered for its bearing on any matter to which it is relevant."

Subdivision (a) of Federal Rules of Evidence, rule 414 states: "In a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant."

Federal Rules of Evidence, rule 415 applies only to civil cases "in which a claim for damages or other relief is predicated on a party's alleged commission of conduct constituting an offense of sexual assault or child molestation." It allows introduction of "evidence of that party's commission of another offense or offenses of sexual assault or child molestation."

recommendation differed from the new proposed rules 413 through 415. intervening cites Congress did not adopt the recommendations submitted or provide otherwise by law. The new rules 413 through 415 thus became effective on July 9, 1995. (Federal Criminal Code and Rules, *supra*, Historical Notes, p. 253.) The Judicial Conference's report, however, is significant because it contains a discussion of the Judicial Conference's understanding of the meaning of the proposed new rules 413 through 415.

The Judicial Conference's report urged Congress "to reconsider its decision on the policy questions underlying the new rules." In other words, the Judicial Conference did not want Congress to adopt the new rules. Some criticisms of the new proposed rules were (1) that they presented a "danger of convicting a criminal defendant for past, as opposed to charged, behavior or for being a bad person" and (2) that they "would permit the introduction of unreliable but highly prejudicial evidence and would complicate trials by causing mini-trials of other alleged wrongs." (Federal Criminal Code and Rules, *supra*, Historical Notes, p. 254.) But that is not what concerns us here. What concerns us here is the Judicial Conference's alternative recommendation. The Judicial Conference report stated: "If Congress does not reconsider its decision on the underlying policy questions, the Judicial Conference recommends incorporation of the provisions of new Rules 413-415 as amendments to Rules 404 and 405 of the Federal Rules of Evidence." (*Id.* at p. 254.) The Judicial Conference's report set forth the text of the conference's proposed amendments to rules 404 and 405, and stated that these proposed amendments "would not change the substance of the congressional enactment." (Federal Criminal Code Rules, *supra*, Historical Notes at p. 254.) The report further stated: "These modifications do not change the substance of the congressional enactment. The changes were made in order to integrate the provisions both substantively and stylistically with the existing Rules of Evidence; to illuminate the intent expressed by the principal drafters of the measure; to clarify drafting ambiguities that might necessitate considerable judicial attention if they remained unresolved; and to eliminate possible constitutional infirmities." (*Id.* at p. 255.) The federal equivalent of section 1108, subdivision (a) appears in Federal Rules of Evidence, rules 413(a) (pertaining to "a criminal case in which the defendant is accused of an offense of sexual assault") and 415(a) (pertaining to "a criminal case in which the defendant is accused of an offense of child molestation"). The Judicial Conference's alternative recommendation was to place the rule 413(a) and rule 415(a) language in a new subdivision (a)(4) to rule 404. The Judicial Conference's new proposed rule 404(a)(4) expressly made admissible "[e]vidence of another act of sexual assault or child molestation, or evidence to rebut such proof or an inference therefrom, if that evidence is otherwise admissible under these rules, in a criminal case in which the accused is charged with sexual assault or child molestation

. . . ." (Federal Criminal Code Rules, *supra*, Historical Notes at p. 255.) The Judicial Conference also proposed a new subdivision (c) to rule 405 (pertaining to methods of proving character), which stated: "In a case in which evidence is offered under rule 404(a)(4), proof may be made by specific instances of conduct, testimony as to reputation, or testimony in the form of an opinion, except that the prosecution or claimant may offer reputation or opinion testimony only after the opposing party has offered such testimony." (Federal Criminal Code Rules, *supra*, Historical Notes at p. 256.) The explanatory note to proposed new subdivision (c) of rule 405, stated in pertinent part: "When evidence is admissible pursuant to Rule 404(a)(4), the proponent's proof must consist of specific instances of conduct. The opposing party, however, is free to respond with reputation or opinion testimony (including expert testimony if otherwise available) as well as evidence of specific instances." (Federal Criminal Code Rules, *supra*, Historical Notes at p. 256.) In sum, it appears to us that the Judicial Conference read rules 413 and 415, the federal equivalent of section 1108, as permitting a defendant to rebut a prosecutor's presentation of other sexual assault evidence with the defendant's own presentation of character evidence of all three types—opinion evidence, reputation evidence, and evidence of specific acts pertinent to the character trait in question. We see no reason to read section 1108 any differently.

The trial court and the prosecutor pointed out in this case that section 1108 does not expressly call for the admissibility of "specific act" evidence by the defendant to rebut the prosecutor's evidence of a bad act introduced under subdivision (a) of section 1108. This is true, but it is also true that section 1108 does not address the topic of rebuttal evidence at all. We are thus not persuaded that the omission from section 1108 of any mention of the types of rebuttal evidence permitted carries any real significance. If respondent's reasoning were accepted, one could argue with equal force that if a prosecutor presented evidence under section 1108, subdivision (a), of the defendant's commission of a prior, uncharged sexual offense, the defendant would not be permitted to testify "no, I did not commit that act." This is because section 1108, subdivision (a) authorizes admission of "evidence of the defendant's commission of another sexual offense or offenses," and does not expressly authorize the admission of evidence that the defendant did not commit the other, uncharged sexual offense or offenses. It appears to us that section 1108, subdivision (a) allows the prosecution to introduce a particular type of evidence ("evidence of the defendant's commission of another sexual offense or offenses") which places in issue a character trait of the defendant—his propensity to commit a sexual offense. Once the prosecutor has done this, the defendant is faced with the task of rebutting (if the defendant chooses to attempt to do so) the prosecution's character evidence. Section

1100 provides: "Except as otherwise provided by statute, any otherwise admissible evidence (including evidence in the form of an opinion, evidence of reputation, and evidence of specific instances of such person's conduct) is admissible to prove a person's character or a trait of his character." Because there is no statute expressly limiting the type of rebuttal character evidence a defendant may present when the prosecution has introduced section 1108, subdivision (a) character evidence, the defendant is permitted to introduce any or all of the three types of character evidence—opinion evidence, reputation evidence, and evidence of specific incidents of conduct.

The court therefore erred in sustaining the objection to appellant's question to Ada: ". . . did he ever touch you in [an] inappropriate manner?"

Appellant contends that the court erred in sustaining the objections to appellant's questions to 11-year-old Tammara as to whether appellant "has the character for child molestation" or was "the type of person who would molest a child." We disagree. In *People* v. *Stoll* (1989) 49 Cal.3d 1136 [265 Cal.Rptr. 111, 783 P.2d 698], the court held that in a child molestation case a defendant's lack of sexual deviance is a character trait within the meaning of section 1102, and that the defendant could therefore introduce evidence of that character trait through the testimony of an expert witness. In *People* v. *McAlpin* (1991) 53 Cal.3d 1289 [283 Cal.Rptr. 382, 812 P.2d 563], the court went further and held that lay opinion testimony about a defendant's lack of sexual deviance can be admitted so long as the requirements of section 800 are met.[8] In *McAlpin* the court ruled that it was error to exclude the lay opinion testimony of two adult women who would have testified that the defendant was not a "sexual deviant" or " 'a person of lustful or lewd conduct with children.' " (53 Cal.3d at p. 1308.) The two women "had dated defendant for approximately six months, had been sexually intimate with him during that period, and thereafter had continued their friendship with him; each also had a daughter of her own." (*Id.* at p. 1304.) The court stated: "A fair reading of the offer of proof shows that the women witnesses would not have limited their testimony to specific instances in which defendant had the opportunity to, but did not, molest their daughters. Instead, the witnesses proposed to testify that they observed defendant's behavior with their children throughout the course of their relationship with him, and their opinion that he is not a person given to lewd conduct with children arose from that experience as a whole. Thus viewed, the proffered testimony was intended to

---

[8]Section 800 states: "If a witness is not testifying as an expert, his testimony in the form of an opinion is limited to such an opinion as is permitted by law, including but not limited to an opinion that is: [¶] (a) Rationally based on the perception of the witness; and [¶] (b) Helpful to a clear understanding of his testimony."

prove the relevant character trait not by specific acts of 'nonmolestation,' but by the witnesses' opinion of that trait based on their long-term observation of defendant's course of consistently normal behavior with their children. The trial court should have allowed such testimony." (53 Cal.3d at pp. 1309-1310, fns. omitted.) Eleven-year-old Tammara was asked no questions which attempted to establish whether she even understood what "child molestation" was. Furthermore, she gave no testimony that she ever observed appellant around any children other than herself. If she did have any understanding of what child molestation and improper touching was, then she knew whether appellant had improperly touched her or not. He either did or he didn't. " '[A] lay witness may testify in the form of an opinion only when he cannot adequately describe his observations without using opinion wording.' " (*People* v. *Miron* (1989) 210 Cal.App.3d 580, 583 [258 Cal.Rptr. 494].) "Where the witness can adequately describe his observations, his opinion or conclusion is inadmissible because it is not helpful to a clear understanding of his testimony." (*Ibid.*, italics omitted; accord, see *People* v. *Sergill* (1982) 138 Cal.App.3d 34, 40 [187 Cal.Rptr. 497].) Tammara testified that appellant had never touched her in a way that made her feel uncomfortable, and that appellant had treated her "nice" and "gentle." It is difficult to see what more appellant could have gotten from this witness. And even if we assume that the refusal to admit Tammara's opinion was somehow erroneous, any error would have been harmless. This is because her opinion would have been based on appellant's treatment of her, a subject about which she did testify.

This leaves us with the question of whether the trial court's erroneous sustaining of the objection to the question to 18-year-old Ada ("did he ever touch you in [an] inappropriate manner?") warrants reversal of the judgment. In our view it does not. It is not reasonably probable that a result more favorable to appellant would have been reached in the absence of the error. (*People* v. *Watson, supra,* 46 Cal.2d 818.) This is because when Ada was asked about her opinion about appellant's "character as it pertains to his treatment, to the treatment of children," she responded that "he take very good care of us." While less direct than an answer to the question about whether appellant ever touched her in an inappropriate manner, this answer certainly implied that appellant did not ever touch Ada in an inappropriate manner.

(C), (D)\*

\*See footnote, *ante,* page 356.

## II, III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Stone (W. A.), J., and Levy, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 17, 1999.

---

*See footnote, *ante*, page 356.