[No. B231571. Second Dist., Div. Eight. July 11, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
FATIH YUKSEL, Defendant and Appellant.

## COUNSEL

David H. Goodwin, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and Douglas L. Wilson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RUBIN, J.**—Fatih Yuksel appeals from his conviction for arranging to meet with a minor for sexual purposes. We affirm.

### FACTS AND PROCEEDINGS

Torrance Police Department Detective Dennis Brady was working in a unit targeting sexual assaults and Internet crimes against children. Using a decoy Internet profile named "Taylorgurl" that he had created to lure online predators, Detective Brady logged into an Internet chat room in November 2009. Appellant Fatih Yuksel, who had also logged into the chat room, began exchanging online instant messages with Detective Brady. Identifying himself as "Taylorgurl," Detective Brady told appellant that he was a 14-year-old girl from Torrance. At appellant's request, Detective Brady sent online photographs to appellant of a young-looking decoy female police officer purporting to be "Taylorgurl." Over several chat sessions during the next few days, appellant turned the content of the instant messages between "Taylorgurl" and himself to sexual matters. Four days after their first online exchange, appellant arranged to meet with "Taylorgurl" at a fast-food restaurant in Torrance. When appellant arrived as scheduled at the restaurant, police arrested him.

The People charged appellant with the crime of meeting a person whom appellant believed to be a minor for the purpose of engaging in sexual

activity. Appellant pleaded not guilty. A jury convicted appellant as charged. The court sentenced appellant to five years' formal probation, contingent upon his serving 180 days in county jail, 30 days of community service, and 52 weeks of counseling. This appeal followed.

## DISCUSSION

Defendant contends the trial court committed two errors that warrant reversal. First, the court improperly defined the word "child" in its jury instruction on the elements of the crime. Second, the trial court unduly restricted the scope of the defense expert's testimony. We find neither point persuasive.

### 1. *Jury Instruction That a "Child" Is Anyone Under 18 Years Old*

■ The People charged appellant with violating section 288.4, subdivision (b).[1] The statute targets an adult who, motivated by an unnatural or abnormal sexual interest in *children*, arranges a sexually illicit meeting with a *minor*. At the close of evidence, the court instructed the jury as follows: "To prove that the defendant is guilty of [violating section 288.4, subdivision (b)], the People must prove that: [¶] 1. The defendant arranged a meeting with a person he believed to be a minor; [¶] 2. When the defendant did so, he was motivated by an unnatural or abnormal sexual interest in children . . . ." (CALCRIM No. 1126.) The court instructed that "A *minor* is a person under the age of 18." (Italics added.) Over appellant's objection, the court additionally instructed, "A *child* is any person under the age of 18 years." (Italics added.)

Appellant correctly notes that in general the meaning of the words "minor" and "child" overlap, but are not exactly the same. California defines a "minor" as a person not of the age of majority, which is 18 years old. (Fam. Code, § 6500.) The definition of "child" is less precise. Webster's dictionary, for example, defines a child as "a young person esp[ecially] between infancy and youth." (Merriam-Webster's Collegiate Dict. (10th ed. 1995) p. 198.) Recognizing the difference between a minor and a child, the United States military permits a 17 year old to enlist with a parent's permission, permission required by the enlistee's being a minor even though one would not call a 17-year-old enlistee a child. (10 U.S.C. § 505, subd. (a).) And, cultural practices often

---

[1] Section 288.4, subdivision (b) applies to: "Every person who, motivated by an unnatural or abnormal sexual interest in children, arranges a meeting with a minor or a person he or she believes to be a minor for the purpose of exposing his or her genitals or pubic or rectal area, having the child expose his or her genitals or pubic or rectal area, or engaging in lewd or lascivious behavior . . . ." (Pen. Code, § 288.4, subds. (a)(1) & (b).)

All further undesignated section references are to the Penal Code.

distinguish between a minor and a child. Coming-of-age rites of passage, for example "Sweet Sixteen" parties, "Quinceañera," and "Bar and Bat Mitzvahs," popularly mark a minor's passage from childhood into young adulthood at different ages even though the celebrant remains a minor.

Appellant contends section 288.4's use of two different words—children and minor—matters because it advances important societal interests. The statute's requirement that an abnormal or unusual sexual interest in *children* motivates the offending adult draws the law's particular sanction, and law enforcement's special attention, to pedophiles, who are adults sexually attracted to prepubescent children. The statute's focus on sexual interest in *children* carves out, appellant contends, a subcategory smaller than all minors because of the horrific harm pedophiles inflict when they prey on sexually immature younger minors. By defining children, as the court instructed here, *as anyone under 18 years old*, the court abolished the difference between children and minors, making the two groups exactly the same. In doing so, appellant contends, the court erroneously removed from the jury's consideration the factual question of whether appellant's sexual interest in the minor "Taylorgurl," who purported to be 14 years old, was motivated by an interest in *children* as section 288.4 requires.

■ Ordinarily, we must interpret different words in a statute to mean different things. (*Scottsdale Ins. Co. v. State Farm Mutual Automobile Ins. Co.* (2005) 130 Cal.App.4th 890, 902 [30 Cal.Rptr.3d 606]; *Kuhs v. Superior Court* (1988) 201 Cal.App.3d 966, 973 [247 Cal.Rptr. 544].) But, if a proposed interpretation results in absurd results, we must reject the interpretation in favor of one that fulfills the Legislature's purpose. (*People v. Broussard* (1993) 5 Cal.4th 1067, 1071 [22 Cal.Rptr.2d 278, 856 P.2d 1134]; *People v. Pieters* (1991) 52 Cal.3d 894, 898–899 [276 Cal.Rptr. 918, 802 P.2d 420].) The Legislature's " 'intent prevails over the letter [of the statute], and the letter will, if possible, be so read as to conform to the spirit of the act.' " (*Broussard*, at pp. 1071–1072.)

■ We do not envision the Legislature meant different things when it used the words "children" and "minor." (*Mejia v. Reed* (2003) 31 Cal.4th 657, 668 [3 Cal.Rptr.3d 390, 74 P.3d 166] [court may turn to relevant policy considerations to extent they reveal legislative intent].) Defining the crime of "child luring," the legislative history for section 288.4 states "This bill creates a new crime . . . concerning persons with an unnatural or abnormal sexual interest in *minors* who contact minors with the intent to engage in sexual activity." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1128 (2005–2006 Reg. Sess.) as amended Mar. 7, 2006, p. D, italics added.) When section 288.4 was proposed, a predecessor statute—section 647.6—applied to "every person who annoys or molests any *child* under 18 years of age."

(Italics added.) The legislative history for section 288.4 noted that its provisions were "drawn from a long-standing statute [(§ 647.6)] that prohibits a person who has an abnormal sexual interest in children from annoying or bothering children." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1128, at p. D.) In borrowing language from section 647.6, the legislative history notes that the element of "abnormal sexual interest in children" was settled and court approved. Presumably sticking with the tried-and-true, section 288.4's drafters adopted the phrasing of section 647.6 without anyone in the Legislature objecting that section 288.4 thereafter used two different words—minor and children—seemingly to refer to the same thing. Given that "there can be no *normal* sexual interest in any child and it is the sexual interest in the child that is the focus of the statute's intent" (*People v. Shaw* (2009) 177 Cal.App.4th 92, 103 [99 Cal.Rptr.3d 112]), we conclude it stands to reason that the Legislature did not intend different meanings for child and minor. To the contrary, applying different meanings would lead to absurd results. A defendant motivated by an abnormal or unusual interest in prepubescent minors, whom appellant concedes are children, could be prosecuted under section 288.4 for rendezvousing with sexually mature 14 to 17 year olds. But a defendant sexually drawn to 14 to 17 year olds who meets minors in that age group for sexual activity would not violate section 288.4 because his deviant interest is only in minors, not children. To avoid such an absurd result, we hold that the trial court correctly instructed the jury that a child under section 288.4 is, like a minor, any person under the age of 18 years.

## 2. *Defense Expert Testimony*

A clinical and forensic psychologist specializing in sexual offenses testified as a defense expert. Before testifying, the psychologist interviewed appellant, administered psychological tests, and reviewed appellant's police file. The psychologist testified he saw no evidence that appellant was a pedophile, which is an adult with an abnormal and persistent sexual interest in prepubescent children. The psychologist conceded that appellant's interest in "Taylorgurl" was sexual, but the psychologist opined that appellant's interest in her was not an unnatural or abnormal interest in children because a 14 year old ("Taylorgurl's" purported age) is not a prepubescent child.

Defense counsel asked the psychologist to explain the reasons for his opinions. The psychologist's answer drew the prosecutor's objection as follows: "[Defense counsel]: In terms of, based on your totality of the database and information you received, does or did [appellant] appear at the time of your evaluation to have an unnatural or abnormal interest—sexual interest in children and/or show pedophilia? [¶] A. No, I don't believe so. I do not see evidence of pedophilia in this case. [¶] Q. What is the basis of your opinion? [¶] A. The very important consideration is that this is a single

incident. He has no prior—[¶] [Prosecutor:] I'm going to object, Your Honor. [¶] [Court:] Sustained." When defense counsel tried a different tack to elicit from the psychologist that his opinion rested in part on his belief that appellant had never before sought sex with a minor before encountering "Taylorgurl," the court again sustained the prosecutor's objections. Defense counsel's objectionable questions which the court did not permit the psychologist to answer were: "Did you have any other information that this had occurred other than this one incident?" and "Would your position change if, for instance, you had evidence of [appellant] texting or chatting with another minor?"

■ Appellant contends the court erred in excluding evidence that he had no previous attempts at sexual contact with a minor before meeting "Taylorgurl." He reasons that because Evidence Code section 1108 allows evidence of prior sexual misconduct to prove propensity to commit a sexual offense, the reverse should apply: Evidence of no prior sexual misconduct is admissible to prove no propensity to commit a sexual offense. (*People v. Callahan* (1999) 74 Cal.App.4th 356, 375 [87 Cal.Rptr.2d 838] [defendant may rebut sexual propensity evidence with evidence "of what might be called, for lack of a better term, evidence of his good behavior under similar circumstances"]; accord, *People v. Mullens* (2004) 119 Cal.App.4th 648, 664–666 [14 Cal.Rptr.3d 534] [error to bar evidence defendant acquitted of uncharged sex offense when court allowed evidence of the uncharged offense to show propensity].) The court seems to have accepted, however, the prosecutor's argument that defense counsel's questions tried to get in through the "back door" appellant's hearsay statements to the psychologist that his offense against "Taylorgurl" was an isolated, one-time incident.

■ Appellant contends the court's exclusion of his hearsay evidence that he had no previous attempts at sexual contact with a minor before "Taylorgurl" interfered with his right to present his defense. We disagree. An expert may rely on otherwise inadmissible hearsay evidence provided the evidence is reliable and of the type that experts in the field reasonably rely upon in forming their opinions. (Evid. Code, § 801; *People v. Hill* (2011) 191 Cal.App.4th 1104, 1121 [120 Cal.Rptr.3d 251].) On the other hand, an expert's reliance on hearsay does not automatically make the hearsay evidence itself admissible. "An expert may generally base his opinion on any 'matter' known to him, including hearsay not otherwise admissible, which may 'reasonably . . . be relied upon' for that purpose. [Citations.] On direct examination, the expert may explain the reasons for his opinions, including the matters he considered in forming them. However, prejudice may arise if, ' "under the guise of reasons," ' the expert's detailed explanation ' "[brings] before the jury incompetent hearsay evidence. [Citation.]" ' [¶] Because an expert's need to consider extrajudicial matters, and a jury's need for information sufficient to evaluate an expert opinion, may conflict with an accused's

interest in avoiding substantive use of unreliable hearsay, disputes in this area must generally be left to the trial court's sound judgment. [Citations.] . . . [¶] . . . In such cases, Evidence Code section 352 authorizes the court to exclude from an expert's testimony any hearsay matter whose irrelevance, unreliability, or potential for prejudice outweighs its proper probative value. [Citation.]" (*People v. Montiel* (1993) 5 Cal.4th 877, 918–919 [21 Cal.Rptr.2d 705, 855 P.2d 1277].) We review the court's decision for abuse of discretion. (*People v. Rowland* (1992) 4 Cal.4th 238, 266 [14 Cal.Rptr.2d 377, 841 P.2d 897]; *Hill, supra*, at p. 1122.)

Here, the court permitted the psychologist to testify why he believed appellant was not a pedophile. The psychologist told the jury that pedophilia was a "persistent and abnormal sexual interest in children." The psychologist explained that a "single incident" of sexual contact with a minor does not qualify as pedophilia. He testified he concluded appellant was not a pedophile after his "comprehensive evaluation" of appellant, including interviewing him, administering two psychological tests, reviewing the police report, and reading the transcript of appellant's and "Taylorgurl's" chat room instant messages. In light of the expert's admitted testimony, the court's rulings sustaining the prosecutor's objections appear to have barred only appellant's hearsay statements to the psychologist that appellant's offense against "Taylorgurl" was an isolated incident, statements which we infer the court deemed to be unreliable under the circumstances. (See *People v. Bell* (2007) 40 Cal.4th 582, 607–608 [54 Cal.Rptr.3d 453, 151 P.3d 292] [trial court did not abuse discretion excluding psychological expert's testimony recounting defendant's hearsay statements to psychologist about his crime].) We find the court did not abuse its discretion in barring the hearsay evidence.

In any case, even if the court erred, appellant does not show the error requires reversal. Appellant's discussion of harmless error principles is conclusory. He merely recites the federal and state tests for error and asserts they apply here. Appellant's conclusory discussion waives the point on appeal, which provides an alternative basis for affirming the trial court's ruling. (*Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 366, fn. 2 [87 Cal.Rptr.2d 654, 981 P.2d 499]; *In re Jordan R.* (2012) 205 Cal.App.4th 111, 126, fn. 15 [140 Cal.Rptr.3d 222]; see *People v. Hughes* (2002) 27 Cal.4th 287, 339 [116 Cal.Rptr.2d 401, 39 P.3d 432] [any error in excluding expert's testimony that he relied on defendant's hearsay statement of his drug-induced mental impairment was harmless because court still gave expert " 'wide latitude' " to present his multiple reasons for his opinion].)

## DISPOSITION

The judgment is affirmed.

Bigelow, P. J., and Flier, J., concurred.