Filed 1/30/24  P. v. Khan CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>AFZAL KHAN,<br><br>　　　　Defendant and Appellant. | C096166<br><br>(Super. Ct. No. MANCRFE20210003819) |

This case arises from an undercover sting operation targeting sexual predators in San Joaquin County.  A jury found defendant Afzal Khan guilty of contacting a minor under 14 years of age with intent to commit a sexual offense (Pen. Code, §§ 288.3, subd. (a), 288, subd. (a); later references are to this code) and meeting a minor for lewd purposes (§ 288.4, subd. (b)).  Defendant makes three claims on appeal:  (1) the evidence was insufficient to sustain these convictions; (2) the prosecutor committed prejudicial misconduct; and (3) the police engaged in entrapment as a matter of law.  We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In April 2021, as part of a joint operation with the San Joaquin County Sheriff's Office and Lathrop Police Services, Department of Justice Special Agent Allison Rueter posted an advertisement on MegaPersonals, an escort website. The advertisement begins, "NEW new CUTEE [] n yung [] ALL u nEeD dnt Miss Ouut ReDy 2 PLay []." The text that follows reads, "AGE 21." Then the ad continues, "NEW NEW SWEET STEPH [] ALL u NeEd Redy 2 pLAy [] CUTE n YUNG [] CLAEN [¶] [] dnt miss out FS BB BBJ GFE GREEK RP PSE !!!! *** NO LAW ENfrCmnt ***." Within the text appear emojis of candy, water spraying, a cat with heart eyes, a flower, a winky face blowing a kiss, and kissing lips. The ad instructs to "TXT NMBR," lists a phone number, and includes three photos of a female with the face partially covered by pink heart emojis. The female in the photos was 25 years old.

Agent Rueter testified that (1) age 21 is the youngest age the site will allow you to list, (2) the site did not verify her age, and (3) she has spoken to people who created ads on the site when they were under 18. She further explained what the emojis and abbreviations meant based on her experience. For example, FS stands for "full service, which includes oral and sexual penetration, whatever the responder to the ad wants"; BB stands for "[b]areback, meaning no condom"; BBBJ means "[b]areback blow job"; and Greek means anal sex. The ad received about 250 responses.

Defendant was one such responder. On April 9, 2021, he called the number twice, but no one answered,[1] and sent the following text messages: "Hi," "How are you doing," and "Are you available?" Agent Rueter responded to the third message with: "Hiii, [smiley face emoji] Sry bb abt 2 go fam campng trip bt will b in stckton after school nxt wk 4 sum fun." Defendant asked when she would be back, Agent Rueter responded,

---

[1] Agent Rueter testified she did not want to answer any audio calls because the operation had not officially started.

"Monday," and defendant responded, "Ok." Agent Rueter then asked, "Wht do u wnt?" and defendant answered, "Full service," which Agent Rueter interpreted to mean penetrated sex.

Two minutes later, defendant asked, "Are you available now please?" and Agent Rueter responded, "Cnt bby, leavin s8n." Defendant texted, "Please let me know when you're available thanks," and Agent Rueter answered, "Will do, hit m3 up Monday." Defendant called the number with no answer and then asked, "Can I save your number," to which Agent Rueter responded, "Yes bby ucn save my # n talk 2 me on . . .mon," followed by a smiley face emoji.

Two days later (a Sunday), defendant texted the number, "Hi good morning how are you doing today, are you available now." He called the number, but there was no answer. Agent Rueter responded via text later that day, "I b avlble 2mrow if u wnt to c me then" with an emoji.

The next day (Monday), defendant sent four text messages to the phone number: "Hi good morning," "How are you doing," "What time are you going to be available," and "?" He called the number, but no one answered. Department of Justice Special Agent Kevin Kurtz took over texting (so Agent Rueter could respond to other replies to the ad) and wrote "I wil b avlble aftr school in aftrnoon 2day" with an emoji. Defendant then questioned, "So like what time" and Agent Kurtz responded, "Aftr 1 pm bby do u lyk yung?" Defendant answered, "Are you available now?" Then defendant called but no one answered. Agent Kurtz texted, "Yes bby bt wit my mom n hav 2 sn33k out. Cud u pik me up n giv me ride? 2 yung 2 drive yt." Defendant responded, "Send me your address please." About 25 minutes later, defendant called the number with no answer and then texted, "Where can I come pick you up," and "Are you there?" Agent Kurtz answered, "Sry bby im at my gmas." Defendant questioned, "So are you not available then?" Agent Kurtz responded, "I wll b in a lil bit bby."

Within the next 16 minutes, defendant texted four messages: "Let me know please," "Where are you," "Send me your address please. Where can I come pick you up?" and two question marks. Agent Kurtz answered, "Im still at my gmas house. Ill go to my frens house in a little." Defendant responded, "OK thanks let me know please" followed by, "Are you in Lodi." Agent Kurtz then answered, "Ill be in Lathrop when I go to my frens. Wut did u want to do?" Defendant attempted another call but no one answered. He texted three more messages: " 'Are you available now?' Two question marks and 'Hello.' " Agent Kurtz asked, "Can u pick me up? Im nt old enuff to drive yet."

Defendant then texted, "Can you please answer the phone" and called the number. Agent Rueter answered. Defendant asked where he should go, and Agent Rueter responded by asking if he could pick her up because she was too young to drive. Agent Rueter then stated that she was 13 but would be 14 soon. Defendant asked, "Are you 14?" Agent Rueter responded that she is going to be 14 "like really soon." After a pause, defendant inquired why she put the ad up. Agent Rueter answered that she wanted to have fun and needed money for things like clothes. She then asked if defendant wanted to meet up and have fun with her. Defendant answered with concern about her age and Agent Rueter asked, "Is that bad? You don't like that I'm almost 14." Defendant responded, "I don't know. It's kind of risky. I don't know." Agent Rueter then stated, "we could have fun," suggested that defendant bring alcohol, and repeated, "we can just have fun and you know it's not risky." Defendant made a sound and then asked, "Where are you right now?" Agent Rueter stated she was in Lathrop, and defendant stated he was in Lodi. Defendant then stated he could come now. Agent Rueter confirmed she would pick a spot, sneak out, and send him the location. Defendant told her to send him the address. Agent Rueter asked him to bring condoms because she was too young to buy them and didn't have any. Defendant answered, "Okay."

4

Shortly after the call ended, defendant texted, "I am on my way," and he and Agent Kurtz arranged via text to meet at a community center in Lathrop. Defendant texted, "I am on my way" and "See you soon." Agent Rueter took over texting and wrote, "kk bby [emoji] wat car u drvng? I will look 4 u." Agent Rueter and defendant then exchanged texts regarding how far away he was, how defendant could recognize her, and what defendant's car looked like. About one minute later, Agent Rueter texted, "Is that u in truck," and defendant responded, "Yes." A traffic stop was conducted on defendant's car after which defendant was taken into custody. No condoms or alcohol were found in his car.

Defendant was charged with three felonies: (1) attempting to commit a lewd act with a child under age 14 (§§ 288, subd. (a); 664 [count 1]); (2) contacting a minor with intent to commit a sexual offense (§ 288.3, subd. (a) [count 2]); and (3) appearing at a meeting with a minor to engage in lewd and lascivious behavior (§ 288.4, subd. (b) [count 3]). Among other instructions, the court instructed the jury on defendant's entrapment defense. The jury found defendant guilty of counts 2 and 3 but was unable to reach a verdict on count 1. As to count 2, the jury found defendant guilty of contacting a minor with intent to commit a lewd or lascivious act on a child under age 14. (§§ 288.3, subd. (a); 288, subd. (a).) The trial court dismissed count 1, suspended imposition of sentence, and placed defendant on probation for two years with various terms and conditions, including a 180-day term in county jail and lifetime sex offender registration. Defendant timely filed a notice of appeal.

## DISCUSSION

### I

### *Sufficient Evidence*

In considering a challenge to the sufficiency of the evidence, our role is limited. "[W]e review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible,

5

and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.]"  (*People v. Albillar* (2010) 51 Cal.4th 47, 60 (*Albillar*).)  "Substantial evidence must be more than evidence which merely raises a strong suspicion of guilt as mere suspicion will not support an inference of fact." (*People v. Martin* (1973) 9 Cal.3d 687, 695.)

"We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence.  [Citation.]  If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.]"  (*Albillar, supra*, 51 Cal.4th at p. 60.)  "It is not our function to reweigh the evidence, reappraise the credibility of witnesses, or resolve factual conflicts, as these are functions reserved for the trier of fact."  (*People v. Tripp* (2007) 151 Cal.App.4th 951, 955.)  And "[w]e need not be convinced of the defendant's guilt beyond a reasonable doubt; we merely ask whether ' "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' "  (*Ibid*.)  "Because we must draw all inferences in support of the judgment, [a] defendant bears an 'enormous burden' when challenging the sufficiency of the evidence.  [Citation.]"  (*People v. Vasco* (2005) 131 Cal.App.4th 137, 161.)

A.      *Count 2*

Section 288.3, subdivision (a) makes it a crime for a person to contact or communicate with a minor with the intent to commit a sexual offense.  To establish a violation of this section here, the prosecution was required to prove that defendant communicated with a minor with the intent to commit a lewd or lascivious act specifically with a minor under age 14.  (§ 288.3, subd. (a); § 288, subd. (a).)  According to defendant, there is insufficient evidence, and at most only inference based on

6

suspicion, to show he harbored such intent after Agent Rueter identified herself as 13 years old. We disagree.

A reasonable jury could conclude that defendant's request for "full service" indicated his intent to commit a lewd or lascivious act based on Agent Rueter's testimony regarding the meaning of the term "full service." The sexual meaning of defendant's request is reinforced by the ad's inclusion of more specific sexual terms like "BB" and "Greek." After revealing her age of 13 and suggesting she and defendant could "just have fun," Agent Rueter asked defendant to bring condoms, to which defendant responded, "[O]kay." Defendant contends Agent Rueter's "just have fun" statement removed sex as an option and his "okay" response to bringing condoms was non-committal, particularly in light of the fact that no condoms were found. He also contends that his intentions regarding Agent Rueter "back-pedal[ed]" after he learned her age, a change he insists can be "discerned both from his words and his tone" in their phone conversation. But defendant's contentions raise mere factual conflicts that we cannot resolve on appeal. After reviewing the ad, hearing the testimonies of Agent Rueter and Agent Kurtz, reading the text exchange between the agents and defendant, and listening to the phone call, the jury could reasonably infer that defendant intended to commit a lewd or lascivious act when he started communicating with Agent Rueter and that such intent remained even after Agent Rueter revealed she was only 13. This inference was supported by substantial evidence and not mere suspicion.

Defendant's reliance on *People v. Fromuth* (2016) 2 Cal.App.5th 91 (*Fromuth*), *People v. Korwin* (2019) 36 Cal.App.5th 682, and *People v. Hanna* (2013) 218 Cal.App.4th 455 is misplaced. In *Hanna*, the reviewing court considered whether the trial court erred in refusing to instruct on a mistake-of-fact defense. (*Hanna,* at pp. 460-463.) Defendant's appeal does not concern that defense. In *Korwin*, the court rejected the defendant's argument that section 288.3 requires an actual minor victim as opposed to an adult decoy. (*Korwin,* at p. 689.) The court concluded the defendant had ample

7

reason to know he was communicating with a minor because he repeatedly acknowledged she was under 18. (*Id*. at p. 690-691.) Such reason to know is also shown here when defendant reacted to learning Agent Rueter was almost 14. And in *Fromuth*, the defendant responded to an advertisement for a "[y]oung cutie looking for a hookup." (*Fromuth,* at pp. 96-97.) The defendant's dogged pursuit of the person who posted the ad after learning she was 15 years old was sufficient to demonstrate his intent to engage in sexual conduct with a minor. (*Id*. at p. 106) While the facts in *Fromuth* are different from those presented here, *Fromuth* did not set threshold facts for satisfying the element of intent to engage in lewd or lascivious conduct with a minor. "[T]he facts of other cases . . . are not particularly helpful in evaluating the sufficiency of the evidence in this case." (*People v. Rundle* (2008) 43 Cal.4th 76, 140, disapproved on another point in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.) It is the evidence in this case that matters, and that evidence was sufficient.

B.      *Count 3*

We similarly reject defendant's contention that the evidence was insufficient to support his conviction for a violation of section 288.4, subdivision (b).

Section 288.4, subdivision (b) provides: "Every person who, motivated by an unnatural or abnormal sexual interest in children, arranges a meeting with a minor or a person he or she believes to be a minor for the purpose of . . . engaging in lewd or lascivious behavior" and "who goes to the arranged meeting place at or about the arranged time" commits a felony. For purposes of this section, a minor is a person under the age of 18 years. (*People v. Yuksel* (2012) 207 Cal.App.4th 850, 855 (*Yuksel*).) Defendant claims there was insufficient evidence to support the jury's finding as to both his purpose and his motivation.

As to purpose, the prosecution was required to prove that defendant intended to engage in lewd or lascivious behavior with a minor. In arguing there was insufficient

evidence to find this element satisfied, defendant relies on the same arguments he makes under section 288.3. Those arguments fail for the same reasons stated above.

As to motivation, the prosecution was required to prove that defendant was motivated by an unnatural sexual interest in children, and that this motivation was a substantial factor in arranging the meeting. (*Fromuth, supra*, 2 Cal.App.5th at p. 103.) " ' "The substantial factor standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical." ' " (*Id.* at p. 105.) We "presume that the jury drew all reasonable inferences that could support its finding that defendant had an unnatural or abnormal sexual interest in children." (*Id.* at p. 104.) Case law explains that when it comes to children, it is generally understood that a defendant's sexual interest in them will be considered abnormal and not within accepted standards of social behavior. (See *Yuksel, supra*, 207 Cal.App.4th at p. 855 [noting that ' "there can be no *normal* sexual interest in any child" ']; *Fromuth*, at p. 105 [the defendant's online pursuit of a decoy posing as a 15-year-old girl supported "a reasonable inference that his sexual interest in [the girl] was demonstrative of his general sexual interest in children"].)

The record here allowed the jury to conclude that defendant had an abnormal and unnatural sexual interest in children and was motivated by that interest when he arranged the meeting with Agent Rueter. On April 9, 2021, Defendant texted the phone number listed in Agent Rueter's ad inquiring if she was available and stating he wanted "Full service." Three days later, he asked what time she would be available. Agent Kurtz stated she "wil be avalble aftr school in aftrnoon 2day" and asked, "Cud up pik me up n giv me ride? 2 yung 2 drive yt." A jury could reasonably conclude that this response informed defendant that Agent Rueter was under 18 years of age. Less than three minutes later, defendant responded, "Send me your address please." Roughly 30 minutes later, defendant texted, "Where can I come pick you up." Another 30 minutes later, he texted, "Where are you" and, "Send me your address please where I can come pick you

9

up." Later that evening, defendant texted, "Are you available now," "??," and "Hello." From these messages, it was reasonable for the jury to infer that defendant had an unnatural and abnormal sexual interest in persons under age 18 and was motivated by that interest in arranging a meeting with her. The evidence also supports the conclusion that this interest remained after he learned Agent Rueter was only 13 years of age because he proceeded to arrange a meeting with her and stated, "[O]kay" when she asked him to bring condoms. Defendant's attempt to distinguish these facts from those presented in *Hanna* and *Fromuth* is unsuccessful. Again, *Hanna* did not concern this issue and *Fromuth* did not establish a template for showing the prohibited motivation.

Defendant's reliance on *People v. Carskaddon* (1957) 49 Cal.2d 423 is similarly misplaced. In *Carksaddon*, the defendant was convicted of child molestation. (*Id*. at p. pp. 424.) But the evidence showed that the defendant was in the company of a 6-year-old girl in a public park, walked down a public street with the girl by his side, and when stopped and queried by an officer, stated that the girl was lost and he was taking her home. (*Id*. at p. 425.) The conviction was reversed because "there [was] no substantial evidence of anything more than friendly noncriminal activity on the part of [the] defendant toward the girl." (*Ibid*.) Such is not the case here.

Lastly, we reject defendant's suggestion that our conclusion renders the motivation element of section 288.4 surplusage by making it coextensive with the intent element. *Fromuth* is correct that "proof of the specific intent element does not necessarily satisfy the 'motivated by' element," but the same evidence can establish both elements. (*Fromuth*, *supra*, 2 Cal.App.5th at p. 106.)

For these reasons, we reject defendant's substantial evidence challenges.

## II

### *Prosecutorial Misconduct*

Although a prosecutor possesses wide latitude to vigorously argue his or her case and to make fair comment upon the evidence (*People v. Edwards* (2013) 57 Cal.4th 658,

740), " 'a prosecutor commits reversible misconduct if . . . he or she makes use of "deceptive or reprehensible methods" when attempting to persuade either the trial court or the jury, and it is reasonably probable that without such misconduct, an outcome more favorable to the defendant would have resulted.' " (*People v. Fuiava* (2012) 53 Cal.4th 622, 679.) "[I]t is improper for the prosecutor to misstate the law generally [citation], and particularly to attempt to absolve the prosecution from its prima facie obligation to overcome reasonable doubt on all elements." (*People v. Marshall* (1996) 13 Cal.4th 799, 831.)

"When attacking the prosecutor's remarks to the jury, the defendant must show that, '[i]n the context of the whole argument and the instructions' [citation], there was 'a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.] In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.' " (*People v. Centeno* (2014) 60 Cal.4th 659, 667 (*Centeno*).) The court must consider the challenged statements in the context of the argument as a whole to make its determination. (*People v. Cowan* (2017) 8 Cal.App.5th 1152, 1159.)

Defendant challenges the prosecutor's closing argument on two topics: (1) the intent elements of sections 288.3 and 288.4 and (2) the reasonable doubt standard. Acknowledging there were no contemporaneous objections to the prosecutor's closing argument, defendant asks us to reach the merits either in the exercise of our inherent authority or because there are grave doubts of his guilt and the acts of misconduct materially contributed to the verdict. Alternatively, defendant contends his trial counsel was ineffective for failing to object. As explained below, we conclude defendant has not demonstrated prosecutorial error.

11

*A.      Remarks Regarding Intent Elements*

During closing argument, the prosecutor listed the elements of each count and argued how she had proven those elements. As to count 1, she argued the intent element was proven because defendant stated he wanted "full service" and Agent Rueter explained the meaning of that term based on her experience and training. Then the prosecutor pointed to the audio call "when [Agent Rueter] says at least three times that she's under 14 years old, she also says, [']Could you bring condoms, too?['] And his response was, [']Okay.['] [¶] So we are arguing here that when he went out there, he was going to willfully – he was going – to intend to touch what he thought was a child that was going to be out there . . . ."

The prosecutor referred to this same argument in discussing count 2: "Defendant's also charged with Count 2, that's Penal Code section 288.3, contact with a minor for a sexual offense. And here we have three elements. . . . On the second element, when [he contacted or communicated with the minor], he intended to commit the 288 [subdivision] (a) involving [the] minor . . . . [¶] What did he intend to do when he got out there? This is about intent. It's not whether the act was completed. Again, he didn't stop texting. He didn't say, [']You're too young.['] Hang up the phone with her. He said, [']Okay. Send me an address.['] [¶] Commit the 288 [subdivision] (a), again, we don't need to actually prove that it happened but that he intended for it to happen. And 288 [subdivision] (a) is someone is under 14 years old; again[,] full service, bring condoms; and three times, [']I'm almost 14.['] "

And the prosecutor relied on the same argument as to the intent element of count 3: "So, again, lewd or lascivious behavior. We're going back to the full service. That's what he initially wanted. He asked to save a phone number. He continued to text and call that same phone number until April the 12th, and then she asked, [']Can you bring condoms?['] So that was the intention here."

12

Defendant contends the prosecutor committed misconduct by representing that defendant's request for "full service" satisfied the requirement for intent to commit a lewd or lascivious act with a minor. But defendant omits part of the prosecutor's arguments. The prosecutor argued that defendant started his conversation with Agent Rueter with the intent for lewd or lascivious acts with her and that this intent remained after learning Agent Rueter was only 13. We see no misconduct in that argument.

Defendant also contends the prosecutor improperly argued it was defendant's burden to prove that his original "full service" intent no longer applied after he knew Agent Rueter's age. Defendant grounds this claim in the following statement by the prosecutor: "Now, the defense also talked about all these red flags of – that were there of Special Agent Rueter being a minor, and yeah, there were lots of red flags. . . . But beyond the hints and red flags, there was actual evidence, and that's on the audio. There's actual evidence: [']I'm 13.['] That's not a hint. That's not a red flag. That's actual evidence: [']I'm 13. I'm going to be 14 soon.['] Again, it's more than a hint. It's straight up saying that. And there was the third time, but this defendant didn't just stop and block her; didn't just end the conversation; didn't just say, oh, yeah, it's too risky, goodbye. He continued. As a matter of fact, he didn't put on the brakes here. He put the gas on from Lodi to Lathrop. He went forward. It didn't stop him once he learned that she was 13. He continued. That's the attempt. That's more than just stopping." We disagree with defendant's characterization of this statement. The prosecutor argued the People's view of what the evidence showed and made no express or implied suggestion that defendant bore the burden of proof. (See *People v. Bennett* (2009) 45 Cal.4th 577, 596 [comments do not impermissibly shift the burden of proof when the prosecutor does not "state or imply that defendant had a duty to produce evidence"].) Because we see no

13

misconduct, we need not reach defendant's arguments that the asserted misconduct was prejudicial.[2]  (*People v. Tully* (2012) 54 Cal.4th 952, 1023.)

B.      *Remarks Regarding Reasonable Doubt*

In closing argument, defendant's counsel relied on reasonable doubt.  He argued the advertisement and the text messages did not provide proof beyond a reasonable doubt that defendant intended to "attempt a child molest with an underage 14-year-old."  And he insisted that Agent Rueter's later suggestion, after revealing her age of 13, that she and defendant "have fun" did not provide "unequivocal proof beyond a reasonable doubt" that defendant intended to have sex with her.

The prosecutor responded to these arguments in her rebuttal, beginning with the following statement:  "So reasonable doubt is proof beyond a reasonable doubt that leaves you with an abiding conviction that the charge is true.  The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt. [¶] So my burden is not proving that there's no doubt at all.  It's that there's no reasonable doubt.  *So was it reasonable?*  And that's what you have to determine, if I have proven it beyond a reasonable doubt or not.  So when you look at all the evidence – and I ask – I know some of you took notes and some of you didn't.  Use

---

[2]      Defendant contends there is strong evidence the jury was confused by the prosecutor's intent arguments because during deliberations they asked, "[a]s to count 1, does the defendant have to believe that the child was under 14, or does that have to be established by fact / testimony?"  At trial, defense counsel argued the question "sounded like burden shifting" and called it a confusing question.  The trial court agreed it was a confusing question and directed the jury to refer to the jury instructions on attempt, section 288, subdivision (a), and mistake of fact.  Defendant contends that the jury's question, combined with the jury's guilty verdicts on counts 2 and 3 and hung verdict on count 1, shows that the jury remained confused as to the intent required for counts 2 and 3.  In reply, defendant suggests that the jury's request for the closing argument transcript, which the trial court denied, also shows the jury was influenced by the closing arguments and confused regarding intent.  Because defendant has not shown misconduct, we do not reach this argument.

your notes.  Use your memory.  When you go back there, discuss it between all of you and see if there's a reasonable doubt.  And I want to bring up that there is no reasonable doubt here."  (Italics added.)

Defendant takes issue with the prosecutor's question, "So was it reasonable?"  He claims this question "effectively shifted the jury's focus from evaluating the evidence to evaluating the doubt."  Defendant likens this question to the mischaracterization of reasonable doubt presented in *People v. Hill* (1998) 17 Cal.4th 800, where the prosecutor stated that reasonable doubt means, "you have to have a reason for this doubt.  *There has to be some evidence on which to base a doubt*."  (*Id*. at p. 831.)  After a defense objection was overruled, the prosecutor in *Hill* reiterated, " 'There must be *some evidence* from which there is a reason for a doubt.  You can't say, well, one of the attorneys said so.' (Italics added.)"  (*Ibid*.)  Although the question was close, our Supreme Court concluded it was reasonably likely that that the prosecutor's comments taken in context, "were understood by the jury to mean defendant had the burden of producing evidence to demonstrate a reasonable doubt of his guilt."  (*Id*. at p. 832.)  We see no parallel between the offending statement in *Hill* and the statement here.  The question, "So was it reasonable?" appears within a larger, accurate statement regarding reasonable doubt.  "[T]here is no reasonable likelihood the jurors would have understood [this question] as imposing any burden on defendant."  (*People v. Young* (2005) 34 Cal.4th 1149, 1196.)

Defendant claims the statements by the prosecutor that followed crossed the line into improper territory.  Specifically, defendant focuses on the following example the prosecutor presented:  "So there's a guy.  He walks into a bank, and he's wearing a black ski mask.  He's wearing all black clothing, and he shows up, and he doesn't say anything, and he goes up to the teller, and he slips her a note.  In the note it says, give me $25,000 now, and he puts a gun on the counter when he hands her the note.  Now, later, he tells people that he had the mask on because he had laryngitis that day and he didn't want to give it to anybody.  So he had this mask on.  He wore all black clothing that day because

all his laundry was dirty, so he ran out of clean clothes, and that's all he had to wear. And he ended up passing the note to the teller because he had laryngitis, and he didn't want to give her laryngitis. That's why he gave her the note instead of talking to her. He put the gun on the counter because his holster was broken, so he had to place it somewhere, so he put it on the counter. Tell me, ladies and gentlemen, it is possible he had laryngitis? Sure. Is it possible he didn't have any clean laundry? Sure. Is it possible that he slipped the note to the teller because of the laryngitis and he didn't want to get her sick? Yeah, that's possible. Is it possible he ended up putting the gun on the counter because his holster was broke? Yeah, it's possible. But all of that together, is that reasonable? No. And that's what we have here. Everything together it is not reasonable doubt." The prosecutor then summarized her view of the evidence and concluded, "There's no reasonable doubt here, ladies and gentlemen."

Defendant contends this example "had absolutely nothing to do with this case" and " 'confounded the concept of rejecting unreasonable inference with the standard of proof beyond a reasonable doubt,' " analogizing it to the example used in *Centeno*.

But *Centeno* is distinguishable. In *Centeno*, the prosecutor used an incomplete and partially inaccurate map of California to illustrate the concept of proof beyond a reasonable doubt, asking the jury whether there could be reasonable doubt the map was of California, even with inaccurate and missing information. (*Centeno, supra*, 60 Cal.4th at pp. 665-666.) The court held that the "use of the visual image misstated the burden of proof, misled the jury into believing its task was analogous to solving a picture puzzle unrelated to the evidence, and failed to accurately portray the state of the evidence presented at trial. [Citation.]" (*People v. Meneses* (2019) 41 Cal.App.5th 63, 72.) In addition, the prosecutor "repeatedly suggested that the jury could find [the] defendant guilty based on a 'reasonable' account of the evidence." (*Centeno, supra*, at p. 73, italics omitted.)

Here, the prosecutor did not present a visual image or other graphic display to explain reasonable doubt. She also did not leave "the jury with the impression that so long as her interpretation of the evidence was reasonable, the People had met their burden." (*Centeno, supra*, 60 Cal.4th at p. 672.) Rather, she attempted to explain the difference between possible doubt and reasonable doubt consistent with the statute defining the burden of proof. (§ 1096; see *People v. Bell* (2019) 7 Cal.5th 70, 111 [approving prosecutor's example of a possible or imaginary, but unlikely, occurrence].)

Moreover, when considered in the context of the entire record, we see no reasonable likelihood that the jury would have understood the prosecutor's comments in an improper or erroneous manner. (See *Centeno, supra*, 60 Cal.4th at p. 667.) Following the prosecutor's rebuttal, the court instructed the jury on the applicable law and explained that the jury was required to follow the court's instructions over conflicting attorney comments. The court explained that a defendant in a criminal case is presumed innocent and that this presumption requires the People to prove a defendant guilty beyond a reasonable doubt. "Proof beyond a reasonable doubt," explained the court, is "proof that leaves you with an abiding conviction that the charge is true. The evidence did not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt." This instruction carries more weight with a jury than the prosecutor's argument. (*People v. Mendoza* (2007) 42 Cal.4th 686, 703.) Defendant's contention that "Counts 2 and 3 were particularly susceptible" to a reasonableness argument fails to rebut the presumption that the jury understood and followed the court's instructions. (*People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1370.)

III

*Entrapment*

Entrapment is an affirmative defense that the defendant has the burden of proving by a preponderance of the evidence. (*People v. Farley* (1971) 19 Cal.App.3d 215, 224) "[T]he test for entrapment focuses on the police conduct and is objective." (*People v.*

17

*Watson* (2000) 22 Cal.4th 220, 223.) It is established if the law enforcement conduct is "likely to induce a *normally law-abiding person* to commit the offense." (*Ibid*.) Police conduct that offers the suspect an opportunity to commit a crime is not entrapment. (*Ibid*..) Thus, a decoy program is permissible. (*Ibid*.) This standard presumes that a law-abiding person would "normally resist the temptation to commit a crime presented by the simple opportunity to act unlawfully." (*Ibid*.)

On the other hand, "it is impermissible for the police or their agents to pressure the suspect by overbearing conduct such as badgering, cajoling, importuning, or other affirmative acts likely to induce a normally law-abiding person to commit the crime." (*People v. Barraza* (1979) 23 Cal.3d 675, 690.) For example, "affirmative police conduct that would make commission of the crime unusually attractive to a normally law-abiding person will [] constitute entrapment. Such conduct would include, for example, a guarantee that the act is not illegal or the offense will go undetected, an offer of exorbitant consideration, or any similar enticement." (*Ibid*.)

"Entrapment is ordinarily a fact question." (*People v. Lee* (1990) 219 Cal.App.3d 829, 836.) "An appellate court will only find entrapment as a matter of law where 'the evidence is so compelling and uncontradicted the jury could draw no other reasonable inference.' " (*Ibid*.) "While case law concedes the possibility of such a finding by an appellate court, it would be a rare result indeed." (*People v. Thoi* (1989) 213 Cal.App.3d 689, 693.)

Here, the jury reached the conclusion that the police conduct did not constitute entrapment. We cannot conclude that the evidence is so compelling and uncontradicted that the jury could only reach the opposite conclusion. Defendant claims the advertisement "drew him in, and it was only at the last minute that he was informed that the 'escort' was actually a minor." Specifically, he takes issue with Agent Rueter's use of a user-friendly escort website and the ad's portrayal of Agent Rueter as 21 years of age with photographs of a 25-year-old woman. We are not convinced the ad and text

18

exchange leading up to the point where Agent Rueter revealed she was only 13 was likely to induce a normally law-abiding person to continue talking to and arrange a meeting with Agent Rueter after her younger age was revealed.  The jury was able to reasonably conclude that there was no badgering, cajoling, or other overbearing conduct in the exchange.  (See *Provigo Corp. v. Alcoholic Beverage Control Appeals Bd.* (1994) 7 Cal.4th 561, 569 [" 'ruses, stings, and decoys are permissible stratagems in the enforcement of criminal law, and they become invalid only when badgering or importuning takes place to an extent and degree that is likely to induce an otherwise law-abiding person to commit a crime' "].)

Defendant also points to the conversation that followed the moment that Agent Rueter revealed she was only 13.  He claims that "he balked" after learning her age and, in response, Agent Rueter "importuned, cajoled, and promised that they could 'just have fun,' which wouldn't be 'risky.' "  Defendant contends Agent Rueter's actions constituted "affirmative actions taken to induce [him] to continue with the communication and meeting."  And, according to defendant, her request that he bring condoms was an additional affirmative act "trying to induce him to commit a crime."  But the jury did not agree with defendant, and we cannot conclude the jury clearly erred in its view of the evidence.  There is no evidence of cajoling or badgering, and a reasonable jury could conclude that Agent Rueter's conduct did not amount to importuning or offer a guarantee of legality.  Viewing the record in the light most favorable to the judgment, as we must, a reasonable jury could find that Agent Rueter, at most, extended an opportunity for defendant to commit a crime.

Defendant's comparison to *Fromuth*, *supra*, 2 Cal.App.5th 91 is unpersuasive.  In *Fromuth*, the court considered whether the trial court erred in refusing to instruct on entrapment.  (*Id.* at p. 109.)  Here, the court gave the entrapment instruction, limiting our inquiry on appeal to whether the evidence was so compelling and uncontradicted the jury could draw no other reasonable inference than defendant was entrapped.

DISPOSITION

The judgment is affirmed.

　　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　　　MESIWALA, J.

We concur:

　　/s/
MAURO, Acting P. J.

　　/s/
DUARTE, J.