Filed 10/17/24  P. v. Pardue CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>BRIAN PARDUE,<br><br>    Defendant and Appellant. | F086694<br><br>(Super. Ct. No. BF181810A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  John R. Brownlee, Judge.

Lori A. Quick, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Jeffrey A. White, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

On July 3, 2020, defendant Brian Pardue exchanged sexually explicit messages with a law enforcement officer who was posing as a minor. On July 5, 2023, defendant was convicted by a jury of attempting to communicate with a minor with the intent to commit a sexual offense (count 1) and arranging a meeting with a person he believed to be a minor for the purpose of committing a sexual offense (count 2). Defendant argues that substantial evidence did not support his conviction on count 2. The People disagree. We agree with defendant and reverse the conviction on count 2.

## PROCEDURAL HISTORY

On March 17, 2021, the Kern County District Attorney filed an information charging defendant with attempting to communicate with a minor with the intent to commit a sexual offense (Pen. Code, § 288.3;[1] count 1); and arranging a meeting with a person he believed to be a minor for the purpose of committing a sexual offense (§ 288.4, subd. (a)(1); count 2).

On July 5, 2023, a jury found defendant guilty on both counts. He was sentenced on August 2, 2023. As to count 1, the imposition of the sentence was suspended, and defendant was granted probation for a term of two years. One of the conditions of probation was that defendant serve the first year of his probationary period in jail. As to count 2, a misdemeanor, defendant was sentenced to a concurrent term of one year in jail.

On August 7, 2023, defendant timely filed a notice of appeal.

## FACTUAL SUMMARY

**The Prosecution's Case**

J. Newell, a sergeant with the Kern County Sheriff's Office, created a decoy profile on a friendship and dating application for adults. Newell used the name "Sydney," set the age to 18 or 19, and attached pictures of a young woman.

---

[1] All further undesignated statutory references are to the Penal Code.

On July 3, 2020, at about 8:55 a.m., Sydney received a "notification to chat" from "Anna." Anna's profile picture was of a woman who appeared to be about 40 years old. However, defendant was the one using the profile.[2]

The conversation started with "some basic chit chat." Eventually, Anna asked Sydney if she was bisexual. Sydney responded, "I think so. I'm new at this whole thing."

Anna told Sydney that she was married. Sydney asked Anna why she was using the dating application if she was already married. Anna responded, "Fun always interests me. I feel naughty quite often." Sydney asked Anna if her husband got involved. Anna told Sydney she "would like him to" and asked Sydney what she was interested in.

Anna and Sydney then discussed Sydney's sexual preferences and experiences. Anna told Sydney that she wanted her husband to give Sydney "oral sex."

Anna asked Sydney if she was 18. Sydney told Anna that she was "going to be 17 next month." Anna told Sydney that she "should play and experiment with [Anna's] husband." Anna also told Sydney that she would tell her husband that Sydney was 18.

Sydney asked Anna about meeting, and Anna told Sydney that she should meet with Anna's husband first. Sydney provided a phone number to Anna, and defendant began texting Sydney as Anna's husband.

Defendant told Sydney he was "very interested" in meeting her. Defendant also asked for a picture, and Sydney sent one.

Sydney told Anna she was concerned that her husband would realize she was not 18. Anna told Sydney to tell her husband that she just turned 18. Sydney told defendant that she was 18.

---

[2] For ease of reference, we refer to Newell chatting in Sydney's voice as Sydney, and to defendant chatting in Anna's voice as Anna.

Anna advised Sydney to meet with her husband.  Sydney said she did not drive.  Anna told Sydney that she would send her husband to Sydney.

Sydney told Anna that she wanted to meet after 5:00 p.m.  Anna asked if Sydney and her husband were going to meet.  Sydney said she was getting in the shower and would text when she was ready.  Anna told Sydney that her husband would meet wherever Sydney told him.

Anna and Sydney then discussed her husband's sexual preferences.  At about 5:30 p.m., Anna asked whether another day would work better.  At about 6:05 p.m., defendant asked Sydney if they could meet on another day because his daughter was coming over.  Defendant also told Sydney that he really wanted to meet her, but that he did not want to be in a hurry.

Anna texted Sydney, telling Sydney to stay excited and that she could "text dirty" with her husband whenever she wanted.  After Sydney told Anna that she could not stop thinking about it, Anna told Sydney she wanted her husband to have sexual relations with Sydney.  Anna also told Sydney that her husband wanted her "bad," and she was sorry that "it didn't work today."

Anna and defendant stopped responding to Sydney at about 7:45 p.m.  At this time Newell was near defendant's house.  Newell eventually went to defendant's house, where he found the cellphone that was used to communicate with Sydney.

**Defendant's Case**

Defendant introduced other conversations he had on July 3, 2020, while posing as Anna on the friendship and dating application.  In one, Anna exchanged sexually explicit messages with a profile named Ashley.  According to Ashley's profile, she was 24 years old.  The conversation ended at 2:42 p.m.

Additionally, A. Evans, a psychology professor, testified for the defense.  Evans testified that "fantasy is kind of engaging in using your imagination to potentially think about different scenarios or situations," and role playing is "[w]here you kind of step into

4.

a character or . . . a thought or idea or an image, even where you kind of act that out . . . ." Online role playing and fantasy typically do not involve a physical encounter, and some people can obtain arousal and gratification even when there is no physical encounter. However, role playing and fantasy can be used to set up sexual encounters.

## **DISCUSSION**

### I.   *Applicable Law and Standard of Review*

To show a violation of section 288.4, subdivision (a)(1), the People must prove the following elements:  (1) defendant arranged a meeting with a person he believed to be a minor; (2) in doing so, defendant was motivated by an unnatural or abnormal sexual interest in children; and (3) defendant intended to engage in sexual behavior during the arranged meeting.[3]  (See *People v. Ramirez* (2019) 43 Cal.App.5th 538, 546–547.)

When evaluating a sufficiency of evidence claim, " 'we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Cravens* (2012) 53 Cal.4th 500, 507.)  "The test for evaluating a sufficiency of evidence claim is deferential."  (*People v. Flores* (2020) 9 Cal.5th 371, 411.)  "We must presume in support of the judgment the existence of every fact that the trier of fact could reasonably deduce from the evidence."  (*People v. Medina* (2009) 46 Cal.4th 913, 919.) "We must also 'accept logical inferences that the jury might have drawn from the circumstantial evidence.' " (*Flores*, *supra*, at p. 411.)  "The conviction shall stand 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." ' " (*Cravens*, *supra*, at p. 508.)

---

[3] The term "children" in this section means persons under 18 years old.  (*People v. Yuksel* (2012) 207 Cal.App.4th 850, 855.)

"The proper interpretation of a statute is a question of law we review de novo. [Citations.] ' " ' "As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning." ' " ' [Citation.] ' [W]e look to 'the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . . [Citation.]' [Citation.] That is, we construe the words in question ' "in context, keeping in mind the nature and obvious purpose of the statute . . . ." ' " ' " (*People v. Lewis* (2021) 11 Cal.5th 952, 961.) Where the language supports more than one reasonable construction, we may look to extrinsic aids, including the legislative history, for additional guidance. (*People v. Ruiz* (2018) 4 Cal.5th 1100, 1105–1106.)

## II.   *Analysis*

Defendant argues that, as to count 2, there is no evidence he arranged a meeting with a person he believed to be a minor. Defendant further argues that, while the evidence shows defendant and Sydney discussed meeting, "[a]bsolutely no plans were made to meet at a particular place or time, or on a particular date." Accordingly, defendant asks us to reverse the conviction on count 2.

The People disagree. According to the People, "[t]he jury heard evidence that [defendant], playing multiple roles, reached out to someone who he ultimately was told was a minor. In one of his roles (Anna) he encouraged the minor to meet with his other role ([defendant]). As Anna encouraged Sydney to meet with [defendant], [defendant] continued the sexual discussion and ultimately discussed a time (after 5:00 p.m.) and location (the parking lot of the local high school) for the meeting. From this evidence, it was reasonable for the jury to infer that [defendant] had arranged the meeting as required by section 288.4, subdivision (a)(1)."

While section 288.4, subdivision (a)(1) does not specify what it means to "arrange[] a meeting," subdivision (b) provides clarification. Pursuant to section 288.4,

6.

subdivision (b), "[e]very person described in paragraph (1) of subdivision (a) who goes *to the arranged meeting place at or about the arranged time*, shall be punished by imprisonment in the state prison for two, three, or four years." (Italics added.) Thus, based on the plain language and reading the statute as a whole, to violate section 288.4, subdivision (a)(1), there must be an arranged meeting place and time.

Applying this standard, we find that substantial evidence does not support the verdict on count 2.

There is evidence that defendant wanted to meet with "Sydney." As Anna, defendant encouraged Sydney to meet defendant and have sexual relations with him. As himself, defendant messaged Sydney, among other things, that he was "very interested" in meeting her. Moreover, the People are correct that there is evidence defendant and Sydney exchanged messages regarding a meeting place (a local high school) and a meeting time (after 5:00 p.m.). However, before defendant agreed on a place and time to meet, defendant asked to meet a different day.

Based on this, there is substantial evidence that defendant intended, and even attempted, to arrange a meeting with Sydney. However, under section 288.4, subdivision (a)(1), the prosecution was required to prove that defendant actually "arrange[d] a meeting" with Sydney. The People point to no evidence, nor did we see any in our review of the record, from which a reasonable jury could have inferred or deduced that there was an arranged meeting place and time.

While not dispositive, we note that Newell, the sergeant who was messaging as "Sydney," was asked at trial, "So this model of investigation was generally based on arranging a meeting with a suspect that you had engaged with online; correct?" He responded, "That would have been, but that didn't take place in this case." Newell was also asked, "And [defendant] never specified any actual date, time, or location for any meeting; correct?" He responded, "That's correct."

Accordingly, even under the deferential substantial evidence standard, defendant's conviction on count 2 must be reversed.[4]

## DISPOSITION

The conviction on count 2 is reversed based on the insufficiency of the evidence. The sentence attached to that count, which includes the fines and fees, is vacated. The trial court is to modify its records to reflect this disposition and advise the appropriate authorities. In all other respects, the judgment is affirmed.


DETJEN, Acting P. J.

WE CONCUR:


SMITH, J.


SNAUFFER, J.

---

[4] Defendant asserts, and the People concede, that if the conviction on count 2 is reversed, the fines and fees associated with it must be vacated. We agree.

8.